The inquiry in this case is reduced to two questions. First, was the relator at the time of the imposition *Page 42 
of the tax in question, doing business in the State of New York within the meaning of the act of 1855; and, secondly, had it any sums invested in such business. The applicability of the act of 1855 to foreign corporations, was settled in the case of TheBritish Commercial Life Insurance Company v. The Commissionersof Taxes, etc. (28 How. Pr., 41; and 31 N.Y., 32), and no point is made as to the amount of the assessment in the present case, provided the relator was assessable at all under the provisions of the act.
The facts of the case can only be gathered from the return of the commissioners of taxes to the writ of certiorari. This return shows a compliance on their part with the formal statutory requirements relative to the mode of making assessments; that they assessed the bank in the sum of $4,000,000. That application was made to them in due time on behalf of the bank to vacate this assessment, and that such application was accompanied by the affidavit which is annexed to the petition upon which the presentcertiorari was granted. The affidavit is thus made part of the return, and the statements which it contains are not controverted, but appear to have been adopted by the commissioners and made the basis of their action. They refused to vacate the assessment, but reduced it from $4,000,000 to $350,000.
The affidavit shows that the relator is a foreign corporation, organized under the laws of Great Britain and of the Dominion of Canada, and is a bank of issue and discount. That for more than fourteen years it has had an agency in the city of New York. All that appears upon the subject of the functions of this agency, is that money and securities belonging to the bank were intrusted to its agents in New York for temporary employment until required elsewhere. That the funds thus received by the agents consisted of part of a general fund reserved by the bank to meet shortly maturing and unexpected liabilities, and that they were employed by the agents in making temporary loans, payable either on demand or at specified periods, but that such funds were at all times subject to the control of the bank and to *Page 43 
its drafts. It is specifically denied that the bank had any permanent capital of any kind invested in business in the city of New York or any branch in this State, or that it either issued bills or received deposits here or transacted any business here except that before described.
The substance of the allegations on the part of the relator is that the bank had no transactions in this State except to transmit its surplus funds to agents here for temporary employment in loans, and that it had no capital invested in any business established here.
The terms of the act of 1855 are very broad. All persons, etc.,"doing business" in this State and not residents thereof, are subjected to taxation on all sums invested in said business, the same as if residents. This language if standing alone and read without reference to any other of the statutory provisions upon the subject, might be construed as embracing in the term business every species of financial or commercial transaction, and in the subject of taxation all capital employed in any manner, temporarily or otherwise, within the State without any exception. But such was not, in my judgment, the intention of the act. At the time of its passage, products of other States consigned here for sale on commission, and money transmitted to agents of moneyed corporations or capitalists for the purpose of investment or otherwise, were expressly exempted. (Act of 1851, chap. 176, § 2.) I do not think that the act of 1855 was intended to repeal or affect this provision. The later act makes no reference to the former, nor are their provisions so inconsistent as to produce a repeal by implication. On the contrary, when the purpose of the act of 1855 is considered, it is very apparent that the abolition of the two exemptions contained in the act of 1851, was not a necessary part of such purpose and that their continuance is in no manner inconsistent with it. As the law stood at the time of the passage of the act of 1855, there was no authority for taxing a non-resident in respect to his personal property. If such property was in the hands of a resident trustee or agent, the *Page 44 
agent or trustee and no other person, could be assessed therefor. But if the non-resident owner controlled and managed his own business in New York, without the intervention of a resident agent, there was no method provided for taxing his assets here. Hence the peculiar language of the act of 1855, which subjects to assessment and taxation non-resident persons, etc., doing business in this State as principals or partners, special orotherwise.
This was plainly intended to remedy the existing mischief, and to reach a class of persons who wholly escaped taxation by residing across the State line, while doing their regular business and keeping their assets in this State (Hoyt v.Comrs. of Taxes, etc., 23 N.Y., 234; Parker Mills Case, id., 244), and was not pointed at special exemptions expressly recognized or created by previous statutes, in pursuance of what the legislature must have deemed a sound policy.
That the exemptions mentioned in the act of 1851 are not abolished by the act of 1855, I regard as conceded in the case ofThe Parker Mills v. The Comrs. of Taxes (23 N.Y., 245, 246). There, the property taxed consisted of goods sent here for sale, and the court (SELDEN, J.) say: "It is clear, therefore, that the property of the relators could not have been taxed to their agent under the law of 1851, and I see no reason to suppose that it was intended by the law of 1855 to adopt a different policy in respect to property so situated." The exemption of products sent here for sale, and that of capital sent here to an agent for investment, are contained in the same section of the act of 1851, and if it was not the intention of the act of 1855 to repeal the one, there is nothing to indicate that the other was intended to beaffected.
The facts in the case of the Parker Mills disclosed a doing of business within this State much more clearly than is shown in the present case. There the company had a depot in the city of New York, to which it transmitted nails manufactured by it in Massachusetts and Rhode Island, for sale by its agent in New York. The sales amounted to about $300,000 per annum; the proceeds were remitted to the corporation in *Page 45 
Massachusetts, and it is to be inferred from the facts that a supply of nails was constantly kept on hand at the New York depot, yet this was not regarded by this court as taxable under the act of 1855. In the present case, the business of the bank was to receive deposits, issue bills and make discounts, but it is expressly denied that it carried on any such business in this State, or engaged in any transactions here, except to send funds not required for immediate use to its agent in New York for temporary employment in loans on call and otherwise, but making no permanent investment, and retaining the right to draw for such funds at all times. This seems to me to fall clearly within the provisions of the act of 1851, exempting from taxation money transmitted by moneyed corporations or capitalists to their agents for purposes of investment or otherwise.
Whether the funds are sent for the purpose of making a single investment or many, or whether such transactions are merely occasional or carried on through a succession of years cannot make any difference. So long as the foreign principal retains the control of his funds, and the transactions of the agent are confined to the mere loaning of the money, carrying on no trade or commercial or other dealings, I do not think the funds can be regarded as invested in a business done here within the meaning of the act of 1855, read in connection with the act of 1851, but that the intention of the act of 1851 was, that for foreign capital transmitted here, for the purpose of being loaned to our own citizens, and employed by them in their business, no tax should be assessed either upon the foreign capitalist or his agent resident in this State; and that the act of 1855 was not intended to change this policy. With the question of its wisdom we have nothing to do. The power of taxation is vested in the legislature, and our duty is simply to interpret its enactments.
The judgment should be reversed.
ALLEN, ANDREWS and JOHNSON, JJ., concur; CHURCH, Ch. J., GROVER and FOLGER, JJ., dissent.
Judgment reversed. *Page 46