THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* THE HORN SILVER MINING COMPANY,
APPELLANT.

*Taxes upon corporations* — 1880, *chap.* 542, *as amended by* 1881, *chap.* 361 — *when a
foreign corporation does business in this State within the meaning of the said acts —
when it cannot claim an exemption as* "*carrying on manufacture within this
State.*"

The defendant is a corporation, organized under the laws of the territory of
Utah, and is engaged in mining and smelting silver in Utah and Illinois. The
bullion is shipped to the city of New York in bars containing about 990 parts
of pure silver in each 1,000 parts of the bullion, and delivered at the United
States assay office where it is refined to the standard of 999 parts to 1,000.
Upon the delivery of the bullion at the assay office certificates for the silver
deposited are delivered to the defendant, and the same are sold by it in the
market.

*Held,* that the defendant could not claim exemption from the taxes imposed upon
corporations by chapter 542 of 1880, as amended by chapter 361 of 1881, as a
manufacturing company "carrying on manufacture within this State."

The defendant had its corporate office in the city of New York, where the registry
of its stock was kept and in which its board of directors held their meetings
and from which they issued instructions to their agents in Utah and Illinois.
All its silver product was shipped to New York, and the certificates received
therefor from the assay office were there sold. Its dividends were there declared
and made payable, and a large amount of its funds were there invested.

*Held,* that the defendant was a foreign corporation "doing business in this State"
within the meaning of the said act.

APPEAL from a judgment in favor of the plaintiff, entered upon
the report of a referee and from an order granting an additional
allowance.

The action was brought by the attorney general in behalf of the
people, under the provisions of section 3 of chapter 542 of 1880, as
amended by chapter 361 of 1881, to recover from the defendant
corporation the taxes upon its franchise and business for the years
ending November 1, 1881 and 1882, respectively.

*Julien T. Davies* and *Edward Lyman Short,* for the appellant.

*D. O'Brien,* attorney general, for the People.

LANDON, J. :

The referee found the fact to be that the defendant was a corporation organized under the laws of the Territory of Utah, and was carrying on business in this State.   He also found that it was not a manufacturing corporation carrying on manufactures within this State.   These facts brought the defendant within the terms of chapter 542, Laws of 1880, section 3, as amended by chapter 361, Laws of 1881, section 1, which provide that such a company " shall be subject to and pay a tax, as a tax upon its corporate franchise or business into the treasury of the State annually."

The defendant urges that the referee erred in so finding the facts upon the evidence.   Without repeating the evidence here at length, the fact seems to be undisputed that the defendant did do some part of its business here, and that, a very important part.   The statute says —" doing business in this State "— not all its business. The referee could not have found otherwise in this respect.

The evidence also showed that the defendant was not " a manufacturing company carrying on manufacture within this State."   It may be that its operations in Utah and Illinois where it separated the silver from the other metals and from the crudities with which it is found to be mingled as it is taken from the mines, may be conventionally and perhaps properly termed a manufacture, but no such separation, and no mechanical or other work was done upon it in this State by the defendant.   It was brought here in bars containing about 990 parts of pure silver out of 1,000 and was delivered to the United States assay office, where it was refined to the standard of 999 parts in 1,000.   But this refined silver was not returned to the defendant.   The assay office delivered to the defendant its certificates for the silver deposited, and these certificates the defendants sold in the market.   If the refining done by the assay office could be called a manufacture, it was a manufacture carried on by that office, and not by the defendant.   This proposition seems to us too plain to need further elucidation.

In *People* v. *Equitable Trust Company* (96 N. Y., 387), which was the case of a Connecticut corporation, having an office in the city of New York, doing the bulk of its business outside of this State, and but very little in it, the tax imposed under the statute in question was upheld.   The court held that the State could

impose a tax upon its business done within this State, that that tax could be specific or arbitrary and not measured by the amount of business done, or dividends earned, or capital employed here. The hardship of this rule of taxation was adverted to in the decision, and its rigor has since been modified by chapter 501, Laws 1885, but this legislation has no effect upon the present case. In the Equitable case, however, it was not denied that the foreign corporation did business in this State within the meaning of the statute, and hence, the court said it was relieved from the necessity of inquiring what is meant by the language " doing business " and " corporate business " in this act. " Does it mean," the court asks but does not answer, " occasional or incidental corporate business, or continuous business through the year ? " Other questions are propounded in like manner from which the learned counsel for the appellant argues that the intimation is plain, that if the question had been in the case, the court would have decided that the business of the Equitable company, done in this State, was too " occasional or incidental," or insignificant, to be fairly considered as falling within the purview of the statute. And he asks that the supposed intimation in that case be made the rule of decision in this.

We do not think, however, that the business of the defendant done in this State can be said to be merely occasional or incidental. It had its corporate office in the city of New York, in which its board of directors held their meetings and its officers issued directions to the agents of the company in Utah and Illinois, and where the registry of stock was kept. Besides this, all its silver product was sent to New York to be refined at the assay office and to be disposed of by the sale of the certificates issued by that office. Its dividends were declared and made payable there, and its funds to large amounts invested there. We are cited to the case of *People ex rel. Bank of Montreal* v. *Commissioners of Taxes* (59 N. Y., 40) as an authority to the effect that money sent by a non-resident to this State for investment is not taxable against him under chapter 37, Laws 1855, which subjects non-residents *doing business* in this State, to taxation upon the moneys employed in such business. But the exemption in that case was allowed under chapter 176, Laws of 1851, which exempted foreign capital transmitted to agents here for the purpose of investment, or otherwise, from taxation.

The court drew the distinction between the principal who lived out of the State, and himself transacted his business in it, without the intervention of a resident agent, and the principal whose real residence and business were in another State, but who sent money here to be loaned by his resident agent. In the former case the fact of non-residence, if the principal in fact and in person did business here, did not exempt his capital employed in the business from taxation under the law of 1855; while in the latter case if the non-resident simply sent money here to a resident agent to be loaned in the name of the principal, and no other business was transacted, the exemption of the act of 1851 applied, the court holding that such a transaction was not the *doing business* which gave the State jurisdiction to tax the money lent. The defendant, however, is not a mere non-resident money lender acting through the person of a resident agent. So far as it is possible for a foreign corporation to be personally present, it is in person doing business here, and that business embraces the further business necessary to be done to make its base bullion marketable as standard bullion and to market the same, and thus to realize in this State the money it loans here. Nor does it simply send its product here for sale and remit all the proceeds to the State of its incorporation or legal residence as in the case of *People ex rel. Parker Mills* v. *The Commissioners of Taxes* (23 N. Y., 242).

We do not think the Court of Appeals has yet announced a rule that will exempt the defendant from the taxes imposed. The tax imposed upon the defendant was $7,500 for the year 1881, and $30,000 for the year 1882. It was imposed upon the basis of the reports made to the comptroller. The statute provides that "if the officers of any such corporation shall neglect to pay the tax imposed on such corporation within fifteen days after the first of January, it shall be the duty of the comptroller to add ten per centum to the tax of said corporation for each and every year for which said tax shall not have been paid, which percentage shall be assessed and collected with the said tax in the usual manner of collecting and assessing such taxes." The tax not having been paid within the prescribed time, or at all, the comptroller did add ten per centum thereto and such addition is embraced in the judgment from which this appeal is taken.

Evidence was given upon the trial which seems to exhibit this additional tax or penalty as a harsh addition to the original tax, but the comptroller had the power, and perhaps was bound to impose it. The defendant did neglect to pay the tax. That neglect was no doubt induced by the hope that the rule of construction adopted by the comptroller would be modified by the courts, and that the statute as to foreign corporations would be declared unconstitutional. Time was really what the defendant wanted in the hope that time would show its right to exemption in whole or in part. The comptroller extended time; but the comptroller could not repeal or suspend the law. The extra allowance granted was, under the circumstances, quite moderate.

Judgment and order affirmed, with costs.

LEARNED, P. J., concurred.

Present — LEARNED, P. J., and LANDON, J.

Judgment affirmed, with costs. Order affirmed, with ten dollars costs and printing disbursements.