(90 App. Div. 560.)

PEOPLE ex rel. NORTH AMERICAN CO. v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 16, 1904.)

1. TAXATION—FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN STATE—
INVESTMENT COMPANY.

Tax Law, § 181 (Laws 1896, p. 856, c. 908), provides that foreign corporations, with certain exceptions, shall pay a license fee to be computed on the basis of capital stock employed within the state. Section 182 requires corporations to pay an annual tax, to be computed, where no dividend is declared, at a certain rate on each dollar of the appraised capital employed within the state. A New Jersey investment company capitalized

at $50,000,000, of which $40,000,000 of the stock was issued, reduced its capital in 1901 to $12,000,000, of which $11,836,700 was issued. During the year ending October 31, 1900, it had an office in New York City, for which it paid an annual rent of $2,227.74, had furniture therein worth $1,500, and paid salaries to local employés amounting to $23,495.12. Its average monthly bank balance carried in the state was $107,564.60; its average amount of stocks, bonds, loans, and other financial securities held in the state was $91,750.47; and the average amount of bills and accounts receivable in New York was $16,666.66. In the year ending October 31, 1901, it paid $2,316.72 rentals; its office furniture was worth $1,000; it paid local salaries amounting to $23,998.47; its average monthly bank balance carried in the state was $491,963.83; its financial securities held in the state were $787,597.20; and the average amount of bills and accounts receivable was $22,866.66. Its treasurer testified that it had no surplus during these years, and that it had not earned enough to pay a dividend. It was also testified that all of its capital was invested in stocks and bonds of other foreign corporations. Held, that capital of the company was shown to be employed within the state, warranting a tax for the year ending October 31, 1900, on the basis of $200,814, and for the year ending October 31, 1901, on a basis of $1,281,833.49, and the imposition of a license fee on the basis of the last sum.

Certiorari by the people, on the relation of the North American Company, against Nathan L. Miller, as comptroller of the state of New York, to review respondent's proceedings in relation to the revision and readjustment of the license fee and franchise ·tax imposed upon the relator for the years ending October 31, 1900, and October 31, 1901. Determination of respondent confirmed.

The relator is a foreign corporation incorporated under the laws of the state of New Jersey as an investment company, and has its principal office in the city of Jersey City, and also maintains an office in the city of New York, where its principal business is transacted. Its authorized capital during the year ending October 31, 1900, was $50,000,000, of which about $40,000,000 was issued, and during the year ending October 31, 1901, was $12,000,000, of which $11,836,700 was issued, the reduction being made by scaling down the value of assets consisting of good will, and each stockholder who had 100 shares receiving instead 30 shares. This proceeding is brought to review the determination of the Comptroller upon a revision and readjustment of an account for taxes and for a license against the relator, under the provisions of sections 181 and 182 of the tax law (Laws 1896, p. 856, c. 908).

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Alfred Jaretzki, for appellant.
John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondent.

CHESTER, J. If during the years in question the relator, in carrying on its business, employed any portion of its capital stock within this state, there is no question but that it was liable to that extent for the license fee and tax imposed upon it. Its business was that of an investment company, and consisted in purchasing, holding, and selling the stocks and bonds of corporations organized under the laws of states other than the state of New York, and doing business outside of this state. All of the business relating to the investment or reinvestment in said stocks and bonds was supervised, if not actually done, at the New York office. In conducting that business it had and employed within this state, during the years in ques-

tion, considerable amounts of money on deposit, as well as stocks, bonds, and other securities; and these moneys and securities, together with a small item of furniture in the New York office, have been made the basis of the license and tax imposed upon the relator. The capital employed within the state is represented by the money and securities and other property which it has here and which it employs in its business, and formed a proper basis of taxation. People ex rel. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762; People ex rel. Seth Thomas Clock Co. v. Wemple, 133 N. Y. 323, 31 N. E. 238.

The relator insists, however, that substantially the same question as is presented in this case for determination was before this court upon a proceeding to review a like tax imposed by the Comptroller upon the relator for a former year, and that his action in so imposing it was reversed by this court upon the authority of People ex rel. Chicago Junction, etc., Co. v. Roberts, 154 N. Y. 1, 47 N. E. 974; People ex rel. North American Co. v. Roberts, 32 App. Div. 631, 53 N. Y. Supp. 1112. The Chicago Junction Case, in the Court of Appeals, upon the authority of which the former case was reversed, was decided by a divided court, three of the judges having dissented from the prevailing opinions, and can hardly be regarded as a controlling authority for a case so unlike it as the one here. There the purpose for which the corporation was organized was to invest its capital in the stock and bonds of an Illinois corporation, and its whole capital was so invested, and the entire business transacted in this state was to receive and distribute the dividends or income derived from such investment. It was held that, although the corporation was doing business in this state, no part of its capital was employed here. So, too, the former case in this court (32 App. Div. 631, 53 N. Y. Supp. 1112) was decided on the facts then here, and which led the court to the conclusion that none of the capital of the relator was employed in this state during the year for which the tax was imposed, but here the record shows that substantially all its business is done in this state; that in the year ending October 31, 1900, the relator had an office in New York City, for which it paid an annual rent of $2,227.74, having furniture therein of the value of $1,500; that it paid salaries to certain officers, clerks, and stenographers employed in the city of New York, amounting to $23,495.12; that its average monthly bank balance carried in the state was $107,564.60; that its average amount of stocks, bonds, loans on call, or other financial securities held in the state against other corporations, joint-stock companies, associations, or individuals was $91,750.47; and that the average amount of bills and accounts receivable in New York was $16,666.66. The record also shows that in the year ending October 31, 1901, it paid $2,316.72 rentals in New York; that its office furniture there was of the value of $1,000; that it paid $23,998.47 salaries to persons employed by it in this state; that its average monthly bank balance carried in this state was $491,963.83; that its average amount of stocks, bonds, loans on call, or other financial securities held in this state against other corporations, joint-stock companies, associations, or individuals was $787,597.20; and that the

average amount of its bills and accounts receivable was $22,866.66. The treasurer of the relator testified that it had no surplus during the years in question. Therefore the items above mentioned could not have been surplus. His testimony also was that up to the date of the imposition of the tax the company had not earned enough to pay a dividend. That being so, these items were not income. They must, therefore, have been capital, and capital employed within the state. It is true that there was also testimony that all of the relator's capital was invested in the stocks and bonds of other foreign corporations, but that was the statement of a mere conclusion, which, with the facts above recited before him, required the Comptroller to determine whether or not the conclusion was correct. The Comptroller decided that it was not, and imposed a tax for the year ending October 31, 1900, on a basis of $200,814; and for the year ending October 31, 1901, on a basis of $1,281,833.49, making a total tax for the two years of $2,223.97; and imposed a license fee on a basis of $1,281,833.49, amounting to $1,602.29.

We think, under the facts before him, he was within the law when he imposed such tax and license fee. The determination should therefore be confirmed, with $50 costs and disbursements. All concur.