(90 App. Div. 591.)

PEOPLE ex rel. HANS REES' SONS v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department.  January 6, 1904.)

1. CORPORATIONS—FRANCHISE TAX—BILLS RECEIVABLE.

Where a domestic corporation operated a tannery in another state, and maintained a business office in New York City, bills receivable for merchandise sold out of the state, which merchandise never came within the state, were not assets of the company, subject to be assessed for franchise tax in the state, though the bill for the merchandise against the purchaser was made out and entered at the company's New York office.

2. SAME—TIME OF ASSESSMENT—DIVISION OF YEAR.

Where a domestic business corporation was organized in October, 1901, but possessed no capital until June 2, 1902, except $500 derived from the sale of the five shares of stock necessary to effect its organization, and after the latter date the corporation began active business and issued its entire capital, it was subject to assessment for franchise tax only for such portion of the year 1902 as it conducted an active business.

3. SAME—COMPUTATION OF TAX.

Where a domestic business corporation conducted a large share of its business in another state, and had paid no dividends, the franchise tax on its assets should be computed by first deducting from all its assets its liabilities, and adding to the remainder the value of its good will, unless included in its assets, and then assessing the tax on such a proportion of such sum as is employed within the state.

Certiorari by the people, on the relation of Hans Rees' Sons, against Nathan L. Miller, state comptroller, to review the latter's determination in assessing a franchise tax against relator for the year ending October 31, 1902, under the franchise tax law (Laws 1896, p. 795, c. 908) as amended.  Modified.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Louis H. Porter, for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for defendant.

PARKER, P. J.  The relator is a domestic corporation, with a capital stock of $500,000.  It was organized October 10, 1901, and five shares of its stock, of $100 each, were then subscribed for and sold.  No more stock was sold or business done by said corporation until June 2, 1902, when the corporation purchased a tannery and other property from one Rees, and issued all the remainder of its stock to pay for the same.  From that time forth it has been actually engaged in business.  Its chief business is tanning and selling leather, and its tannery and a large part of its property are situated in North Carolina.  It runs another small tannery in Virginia.  Its office, however, and the place where it conducts its business, is in New York City, and it also manufactures some leather there.  It appears from the record before us that on October 31, 1902, its gross assets amounted to $850,348.36, and its liabilities amounted to $350,000.  Of its gross assets, $273,552.32 were employed in this state.  This item does not include certain bills receivable, amounting to $15,401.33, which were due for leather made at tanneries out of the state, and sold to

parties residing out of the state, and which had never been within this state. No dividend has ever been made by the company, nor have any sales of its stock been made during the year. The Comptroller, after the annual report of the company was filed, made an assessment under sections 182 and 190 of the tax law (Laws 1896, pp. 856, 861, c. 908) for the year ending October 31, 1902, appraising the value of its capital stock employed within this state at $172,500, and fixed the amount of the tax at $258.75. The company asked for a rehearing, and after evidence was taken the Comptroller revised the assessment, and fixed the appraised value of the capital stock employed in this state at $102,500, and the tax thereon at $153.75. The relator claims that no tax whatever should have been assessed against it, but that, if it is liable to pay any, the Comptroller has fixed it at much too high an amount. The case comes here upon a certiorari to review such decision of the Comptroller.

Several assignments of error are presented by the relator:

1. The Comptroller claimed that the item of $15,401.33, viz., bills receivable for merchandise sold out of the state, and which never came within the state, was nevertheless capital employed within this state, and estimated the tax upon that basis. I am of the opinion that the decision of the Comptroller in that respect was erroneous. Although the contract of sale may have been made at their office in this state, the property itself was never in this state, nor does anything representing it come within this state until the purchase price is paid and received in this state. It seems to me that such property is no more employed in this state than is the tannery itself, located in North Carolina. The fact that a bill is made out against the purchaser, and possibly filed and entered in a book in the office of the company at New York City, does not bring the capital, or the assets represented by such bill, into this state. In this particular I think the assessment should be corrected.

2. It is claimed that from the time of the organization of the company in October, 1901, until June 2, 1902, it possessed no capital, except the $500 derived from the sale of the five shares of stock needed to effect its organization, and employed none, in this state nor anywhere else, and that, in estimating the amount of capital stock employed in this state as a basis for the tax, the average amount used during the entire fiscal year, only, should be taken; that is, that, the tax being an annual one, the capital stock appraised should be apportioned throughout the entire year. It is conceded that the company had no property, save the $500, and did no business during the first seven months of the year; that during the last five months it had the full sum of $850,348.36 as its gross assets; and that $273,552.32 were employed within this state; and within the principle laid down in People ex rel. Brooklyn Rapid Transit Co. v. Morgan, 57 App. Div. 335, 68 N. Y. Supp. 21, affirmed in 168 N. Y. 672, 61 N. E. 1132, I am of the opinion that the relator's claim is a correct one. In that view, the estimate should assume that five-twelfths only of the assets above given were carried by the company through the entire year.

The further claim is made by the relator that, in ascertaining the amount of capital stock employed in this state, there should be first

deducted from the gross amount of assets employed by the company, viz., $850,348.36, the total liabilities, viz., $350,000, which would leave net assets to the amount of $500,348.36, and that there should then be deducted therefrom the amount of its assets or capital employed without the state, viz., $561,394.71, in order to ascertain the amount of capital employed within this state. Manifestly, since the debts exceed the assets employed in this state, such method would leave no assets or capital whatever to be taxed within this state. In my opinion, such a method would not meet the requirement of the statute. It results in charging against the assets employed in this state the whole indebtedness of the company. And this is claimed to be the correct method, on the theory that the amount of the company's indebtedness should be deducted from the amount of its taxable property in the place of its domicile, and where the tax is sought to be enforced. And the principle of the rule held in People ex rel. Thurber-Whyland Co. v. Barker, 141 N. Y. 118, 35 N. E. 1073, 23 L. R. A. 95, is invoked to sustain this claim. In that case the court was dealing with the subject of direct taxation upon a nonresident company's personal property. In this case no taxation upon the property in question is intended. A tax is to be levied upon the company's franchise, and the statute prescribes a method by which the amount of such tax shall be ascertained. In a case where no dividends whatever have been paid, and where no sales of stock have been made, the direction is to appraise the value of the capital stock employed within this state, and levy a tax of 1½ mills thereon. Sections 182, 190, c. 908, pp. 856, 861, Laws 1896. The method of fixing the value of the capital stock in these cases has been frequently pointed out. People ex rel. Wiebusch v. Roberts, 19 App. Div. 574, 46 N. Y. Supp. 570, affirmed in 154 N. Y. 101, 47 N. E. 980. From the value of all its assets, deduct its liabilities, and add to the remainder the value of its good will, unless, as in this case, it has already been included in the value of its assets, and such proportion of that sum as is employed in this state is the sum on which the tax is to be levied. Evidently that sum represents the value of its capital stock employed in this state, and upon which the statute (section 182, p. 856) directs that the tax of 1½ mills on the dollar shall be levied. Applying such rule to this case, the total assets or property used by the corporation was $850,348.36; the total liabilities were $350,000; leaving the net assets, or the actual value of all its property, at $500,348.36; and, this being a case where there were no dividends and no sales of its capital stock, it represents the actual value of its capital stock. It appears from the record that the proportion of the gross assets which was employed in this state was .3216 of the whole amount, and hence that proportion of the actual value of its whole capital stock, viz., of $500,-348.36, will give the value of so much thereof as is employed in this state, viz., the sum of $160,911.91. But this amount was actually employed only five months of the year, and, inasmuch as only such sum should form the basis of taxation under this section as represents the amount employed through the whole year, only five-twelfths of that sum, viz., $67,056.60, is the sum upon which the tax in this case should be computed. One and one-half mills upon $67,056.60

gives a tax of $100.58, and such, I conclude, should have been the tax which the Comptroller should have assessed in this case.

Determination of the Comptroller modified as per opinion, and, as so modified, confirmed, with $50 costs and disbursements to the relator. All concur.