possession of his agent in the state, when transmitted to such agent for the purpose of investment or otherwise; the provision applying only when the foreign principal retains control of his funds, and the transactions of the agent are confined to the mere loaning of the money, carrying on no trade or commercial or other dealing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 350.]

Certiorari by the people, on the relation of the International Banking Corporation, against one Raymond and others to review an assessment. Assessment sustained.

Alexander & Green (David Rumsey, of counsel), for relator.

William B. Ellison (Curtis A. Peters, of counsel), for respondents.

(117 App. Div. 62)

PEOPLE ex rel. INTERNATIONAL BANKING CORP. v. RAYMOND et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. January 11, 1907.)

1. TAXATION—PLACE OF TAXATION—FOREIGN CORPORATION DOING BUSINESS WITHIN STATE.

A foreign banking corporation having its principal office in the state and branch offices and agencies in other cities managed from the main office, is doing business within the state, within the meaning of section 7 of the tax law (Laws 1896, p. 800, c. 908), providing for the taxation of nonresidents doing business within the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 286.]

2. SAME—CAPITAL EMPLOYED WITHIN STATE—CREDITS—EVIDENCES OF INDEBT-
EDNESS.

    Where a foreign banking corporation, maintaining its principal office
in the state and branches and agencies in other states, carries on the
business of selling its own drafts on its own branches and agencies, which
in turn draw upon the principal office for reimbursement and also to pay
for such drafts as have been sold, thereby becoming indebted to the main
office, which uses such indebtedness for the payment of any further
drafts that may be drawn and sold by it, such credits and evidences of
indebtedness were taxable as capital employed and invested within the
state.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 290.]

3. SAME—EXEMPTIONS—AGENCY OF INVESTMENT OF MONEY WITHIN STATE.

    Moneys, credits, and evidences of indebtedness, employed and invested
within the state by a foreign banking corporation doing business therein,
were not exempt from taxation, under subdivision 13, § 4, of the tax law
(Laws 1896, p. 799, c. 908), exempting moneys of a nonresident under the
control or in the possession of his agent in the state, when transmitted
to such agent for investment or otherwise, because they were not in the
hands of an agent, but in the corporation's own hands, and, further be-
cause they were not sent to the corporation for collection, but belonged to
it, and were needed and used in its business.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 350.]

Appeal from Special Term, New York County.

Certiorari by the people of the state of New York, on the relation
of the International Banking Corporation, against Frank Raymond
and others, as the commissioners of taxes and assessments of the city
of New York, to review a certain tax assessment. From an order
dismissing the writ (102 N. Y. Supp. 84), relator appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-
GRAHAM, CLARKE, and HOUGHTON, JJ.

David Rumsey, for appellant.
Curtis A. Peters, for respondents.

HOUGHTON, J. The relator is a banking corporation organized
under the laws of the state of Connecticut, where it maintains a
statutory office. It has a place of business at No. 60 Wall street, in
the city of New York, with an office staff of 50 or more persons.
It maintains branches in the cities of Washington and San Francisco
and at many of the commercial centers of foreign countries. Its
business is the purchasing and selling of foreign bills of exchange to
travelers and for commercial purposes, and the paying of such drafts
as may be drawn on it at the city of New York by its various branches
and agents, and the collecting of such as may be transmitted by them
to it for that purpose, with an occasional loaning temporarily of
surplus moneys. The average amount of moneys on hand does not ap-
pear, but at one period of the year for which the tax was levied the
sum was $3,000,000. The relator has no certificate permitting it to
do business in this state, but it has been conducting its business sub-
stantially as it now does since 1902, and all of its commercial affairs
are managed by its directors and officers at the New York office.
After a hearing the respondent commissioners determined that the
relator was employing capital to the extent of at least $69,500 in its
business in this state, and fixed assessment against it at that sum. A

writ of certiorari was obtained, which was dismissed, and from the order of dismissal this appeal is taken.

The relator urges that it is not doing business in this state, within the meaning of section 7 of the tax law (Laws 1896, p. 800, c. 908), and that, if it is, the capital which is invested in such business is not within this state nor under its jurisdiction, but must be deemed to be held in the state of Connecticut, the legal situs of the corporation, and, further, that whatever capital is employed here is exempt from taxation under subdivision 13 of section 4 of the tax law. We think none of these contentions can be upheld. Manifestly the relator is doing business within this state. It maintains here an office, and has for some years. Its business affairs and branches and agencies are managed by and from that office, which is one of magnitude; and apparently it is doing the business that any international banking house would do with extensive and assured connections. Notwithstanding the corporation is a foreign one, and hence a nonresident, to the extent of the capital which is invested in its business conducted in this state, it is taxable under the express provisions of section 7 of the tax law.

But the relator insists that the $123,000, which was the basis of the assessment, less the deduction for debts, consisted wholly, except the $6,000 of bank deposit, of bills, notes, and drafts receivable, which were not investments in business, but were simply debts due to it, and in no sense, an investment in business. It is evident that the relator must employ some capital to carry on the business which it does. The business which it carries on is the selling of its own drafts on its own branches and agents. Not only to reimburse themselves do these branches and agents draw upon the relator, but they draw upon it to pay such drafts as they have sold. In this way it may be assumed such branches and agents become indebted to the main office in the city of New York. In turn this indebtedness is used for the payment of such further drafts as may be drawn and sold by the home office. These credits and evidences of indebtedness, therefore, constitute relator's stock in trade. They were physically in the city of New York, and held here, and were not in transit to the state of Connecticut, and we think such use of moneys and credits is the employment and investment of capital within the state, which subjects it to taxation.

A foreign corporation doing business within this state is taxable upon credits and bills receivable due the corporation from such business. People ex rel. Burke v. Wells, 184 N. Y. 275, 77 N. E. 19; People ex rel. Yellow Pine Co. v. Barker, 23 App. Div. 524, 48 N. Y. Supp. 553, affirmed 155 N. Y. 665, 49 N. E. 1103, on opinion below; People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 51 N. E. 1043. The case of People ex rel. N. E. Loan Co. v. Roberts, 25 App. Div. 16, 49 N. Y. Supp. 10, affirmed 156 N. Y. 688, 50 N. E. 1120, on opinion below, although arising under the franchise tax law is instructive and closely resembles the case under consideration. The relator in that case was a foreign corporation whose business consisted of loaning money on bonds and motgages upon property in Western

states. It had a place of business in the state of New York and kept on hand a certain number of Western securities, which were sold and replenished in the course of its business, the proceeds of which sales were temporarily deposited and subsequently sent for reinvestment. It was held that, to the extent of the moneys temporarily on hand and the securities through which it transacted its business, it employed capital within this state, and was, therefore, subject to a license tax.

Finally, it is urged that, even if these demands and evidences of debt can be deemed within the state, they were sent here for collection, or are moneys of a nonresident under the control or in the possession of his agent, transmitted here for the purpose of investment or otherwise, and that they are exempt from taxation by the provisions of subdivision 13 of section 4 of the tax law, and that the decision in People ex rel. Bank of Montreal v. Commissioners, 59 N. Y. 40, compels us to so hold. One answer to this contention is that they are not in the hands of an agent of the relator, but are held by the relator itself. Another answer is that they have not been transmitted here by the relator for collection, but have been sent here to the relator, because they belong to it, and because it desires to use them here in its business. The case of People ex rel. Bank of Montreal v. Commissioners, supra, apparently turned upon the fact that the foreign corporation was employing an agent to transact its business in this state, and was not itself doing business here. In construing Laws 1855, p. 44, c. 37, in connection with Laws 1851, p. 722, c. 371, § 2, which two laws contained substantially the provisions found in section 7 and subdivision 13 of section 4 of the present tax law, Judge Rapalle, in the course of his opinion, says:

"As the law stood at the time of the passage of the act of 1855, there was no authority for taxing a nonresident in respect to his personal property. If such property was in the hands of a resident trustee or agent, the agent or trustee, and no other person, could be assessed therefor. But, if the nonresident owner controlled and managed his own business in New York without the intervention of a resident agent, there was no method provided for taxing his assets here. Hence the peculiar language of the act of 1855 which subjects to assessment and taxation nonresident persons, etc., doing business in this state as principals or partners, special or otherwise."

It was finally concluded that so long as the foreign principal retained the control of its funds, and the transactions of the agent in this state were confined to the mere loaning of the money in single investment or in many, such act was not the carrying on of business, and that no tax could be imposed. This strict interpretation of the statute does not seem to have found great favor with the courts; for, so far as we have been able to discover, the case has never been cited in any of the numerous tax decisions, except in People ex rel. N. E. Loan Co. v. Roberts, supra, where it was held not controlling, as it manifestly was not. Whether the decision is to be deemed a correct interpretation of the statute or not, it does not apply to the present case; for such funds as the relator employed in this state were not in the hands of an agent, but of itself.

Our conclusion is that the relator was properly assessed, and that the writ was properly dismissed, and that the order should be affirmed, with costs. All concur.