PEOPLE ex rel. MANHATTAN SILK CO. v. MILLER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. March 11, 1908.)

1. TAXATION—FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN STATE.

Money invested by a foreign corporation, one of whose purposes is to hold the stock of another corporation, in the stock of that corporation, is taxable within Tax Law, Laws 1896, p. 856, c. 908, §§ 181, 182, imposing a license tax and a franchise tax on foreign corporations for the privilege of doing business in the state, based on the capital employed therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 290.]

2. SAME.

A foreign corporation, receiving dividends on stock in another corporation, whose stock it is one of its purposes to hold, is doing business for a profit, so as to render it taxable within Tax Law, Laws 1896, p. 856, c. 908, §§ 181, 182.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 286.

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

3. SAME.

Where the indebtedness of a foreign corporation is incurred generally in the business, and not in respect of any particular asset which is within the state, such indebtedness will be deducted from the sum of the assets of the corporation wherever found and an amount offset against

the value of the assets within the state as will be proportionate, in estimating the amount of tax for which the corporation is liable under Tax Law, Laws 1896, p. 856, c. 908, §§ 181, 182.

Certiorari by the people, on the relation of the Manhattan Silk Company, against Nathan L. Miller, as State Comptroller of New York, to review his determination fixing the amount of a license tax to be paid by relator under Tax Law, Laws 1896, p. 856, c. 908, § 181, and the amount of franchise taxes to be paid by relator for the years ending October 31, 1898, 1899, 1900, 1901, and 1902, under section 182. Determination of Comptroller confirmed.

The relator is a foreign corporation organized under the laws of West Virginia, in which state it maintains a nominal office to comply with the statute. Its business office is in the city of New York. Its authorized capital stock is $500,000, of which $324,000 is actually issued. The relator acts partly as a holding corporation and partly as a business corporation. It owns the capital stock of several constituent companies, having invested the sum of $149,000 of its capital in the stock of certain corporations engaged in the manufacture of silk. The sum of $84,500 is invested in the stock of mills within the state of New York, and $64,500 in the mills located outside of the state. The balance of its capital is invested in its other business. The other business of the corporation is acting as purchasing agent for these mills, of which it owns the capital stock. It seems that this corporation purchases the raw silk within the city of New York. This silk is then transferred to those mills. The product of the mills is sold by other brokers, who make payments from the proceeds of such product to the relator for the moneys expended in the purchase. The relator charges no commission, makes no profit, but acts as purchasing agent, simply by reason of the fact that it is the owner of the stock of the corporation.

The Comptroller fixed the franchise taxes which the relator should pay at $2,142.56 and fixed the license fee at $304.69. This franchise tax covered five years. The Comptroller ascertained the amount by deducting first from the $324,000, the capital paid in, $149,000 invested in stock of its constituent company. The brief of the Attorney General, which undoubtedly speaks for the Comptroller, then proceeds: "To find the proportion of this balance of $175,000 of the capital stock which was used within the state, the Comptroller took such proportion thereof as the assets of the corporation within the state bore to the whole assets of the corporation, excepting from such assets the sum of $149,000, which the direct evidence shows was partly invested within and partly invested without the state. The result showed that 91 per cent. of said sum of $175,000, being $159,000, was employed within the state, and this sum, with the $84,500, original investment of capital in the state, the Comptroller took to make the whole investment within the state, aggregating $243,750. This amount was taken as the basis of the taxes for the years 1898, 1899, and 1900. There being a loss in the years 1901 and 1902, the amount was reduced to $226,688, on which sum the tax was levied for those years."

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Nussbaum & Coughlin (Alfred A. Cook, of counsel), for appellant.

Julius M. Mayer (Timothy I. Dillon, Deputy Atty. Gen., of counsel), for respondent.

SMITH, P. J. The relator complains that the money invested in the stock of the other corporation was not taxable; but was simply an investment. Inasmuch as this was one of the purposes of the corporation, however, we have held that such an investment is taxable. People ex rel. North Am. Co. v. Miller, 90 App. Div. 560, 86 N. Y. Supp. 386,

affirmed 182 N. Y. 521, 74 N. E. 1124. It is further contended, inasmuch as this company was not doing business for a profit, that the capital was not employed within the state. That contention is not good here, because they were doing business for a profit. They took their profits through their dividends in the corporation in which they held the stock.

A further contention is made that the indebtedness of the corporation within the state should be deducted from the capital which is held to be employed within the state. This would offset the capital within the state and leave nothing to be taxed. It may be that there are cases where the indebtedness within the state should be offset against capital employed within that state. Those are cases, however, where the indebtedness was in respect of the specific assets which are found within the state. Where the indebtedness is general—that is, is incurred generally in the business—and was not incurred in respect of any particular asset which is within the state, there is no reason why it should not be deducted from the sum of the assets of the company wheresoever they may be found, and an amount offset against the value of the assets within this state as will be proportionate. Such seems to have been the rule of this department in People ex rel. Rees Sons v. Miller, 90 App. Div. 591, 86 N. Y. Supp. 193. Determination of Comptroller should be affirmed, with $50 costs and disbursements.

Determination of the Comptroller confirmed, with $50 costs and disbursements. All concur.