(151 App. Div. 764.)
PEOPLE ex rel. DAVID WILLIAMS CO. v. SOHMER, State Comptroller.

(Supreme Court, Appellate Division, Third Department.   June 27, 1912.)

1. TAXATION (§ 376*)—FRANCHISE TAX ON FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN THE STATE.

In computing the franchise tax, which by Tax Law (Consol. Laws 1909, c. 60) § 182, is to be computed on the amount of the capital stock of foreign corporations employed in this state, due from a corporation which does no business in the state of its incorporation, except such as is necessary to maintain its incorporation, and it maintains an office in this state where its principal officers perform their services, where subscriptions to periodicals published by it are received and paid for, and the periodicals themselves published, where advertising contracts, constituting its principal source of income, are either made or approved and paid for, and where its only bank account is kept, no receipts from the business being transmitted to the office in the state of its incorporation, and which makes no attempt to separate its foreign and domestic business, open accounts due on contracts for advertising from nonresidents obtained by agents in other states are to be regarded as a part of its capital stock employed in this state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

2. TAXATION (§ 376*)—FRANCHISE TAX ON FOREIGN CORPORATIONS—CAPITAL EMPLOYED WITHIN THE STATE.

Where, on the proceedings before the State Comptroller to determine the franchise tax on a foreign corporation, the corporation did not definitely prove the value of furniture in the offices of agencies in other states, and in its corporate report claimed no exemption on account of such investment, the Comptroller properly refused to deduct such investment from the amount of capital stock employed in this state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Certiorari by the People, on relation of the David Williams Company, against William Sohmer, as Comptroller of the State of New York, to review his proceedings in relation to the revision and readjustment of the franchise tax imposed on the relator for the year ending October 31, 1909.   Determination of the Comptroller confirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Edward H. Fallows (George M. Judd, of counsel), for relator.
Thomas Carmody, Atty. Gen., and Franklin Kennedy, Deputy Atty. Gen., for respondent.

HOUGHTON, J.   [1] The relator is a foreign corporation organized under the laws of the state of Maine and has its official office at Augusta in that state, but has no property and does no business there except such as is necessary to maintain its incorporation.   Its business is publishing, and it published the periodicals known as "The Iron Age," "The Metal Worker," and "The Building Age," as well as some few books on technical subjects.   The main business office is in the city of New York.   Subscriptions are received and paid for, and its periodicals are published and mailed to subscribers there.   Advertising contracts which constitute the prin-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cipal source of income are received, approved, directed to be executed and paid for at such office, and the books which it publishes are sold therefrom. Its only bank account is kept there. Its principal officers and business managers reside and perform their services in that city, except its supervisor of agencies, who largely travels outside the state. In Boston, Philadelphia, Chicago, Pittsburgh, and in several other cities throughout the country it maintains agencies for the soliciting of advertising, all, however, under the direction and supervision of the New York office.

The relator concedes that it is doing business within the state of New York and that it should pay a franchise tax on about one-third of its capital as being employed therein.

The Comptroller determined that all of its capital was being employed in this state and imposed a franchise tax upon that basis.

In round numbers, the relator's total average value of stock in trade, bills, and accounts receivable and monthly bank balance during the year in question was $120,000. The one-third which the relator concedes represents employment of capital in this state is made up of stock in trade, monthly bank balance, subscriptions to the periodicals, and amounts received from advertisers residing in the state of New York. The other two-thirds is represented by open book accounts against nonresident advertisers obtained through the efforts of the agencies maintained by the relator in the cities of other states.

Notwithstanding the fact that these contracts for advertising are forwarded by the agents to the New York office for acceptance and execution, and that the amounts due thereon are payable at such office, the relator insists that these open book accounts cannot be deemed property within this state, or to represent business carried on or capital employed therein within the meaning of section 182 of the Tax Law for the purpose of computing a franchise tax, because their situs is either at the home office of the corporation in the state of Maine or in the various states where the debtors reside or where its soliciting agencies are maintained.

It is conceded that if notes or other negotiable instruments had been taken from the foreign advertisers and were being held at the New York office until paid, under the authority of People ex rel. Burke v. Wells, 184 N. Y. 275, 77 N. E. 19, 12 L. R. A. (N. S.) 905, 121 Am. St. Rep. 840, a different rule would apply, and that the situs of the instruments would be here, and that they would represent capital employed in business carried on in this state.

In the above case bills receivable represented by open book accounts as well as notes held for merchandise sold had been included in an assessment against a foreign corporation doing business in the city of New York. The relator had failed to properly present the question, and the court declined to decide whether the open accounts so differed from notes as to render them not subject to taxation as part of the capital employed by the corporation within this state.

This court, in People ex rel. North American Co. v. Miller, 90 App. Div. 560, 86 N. Y. Supp. 386, affirmed 182 N. Y. 521, 74 N. E.

1124, expressly held that in computing a franchise tax it was proper to include, as part of the capital employed by a foreign corporation doing business in this state, the average amount of bills and accounts receivable by it from customers in other states, as it also held in People ex rel. Union Sulphur Co. v. Glynn, 125 App. Div. 328, 109 N. Y. Supp. 868. The reported decisions of these cases do not state that the accounts were due from nonresidents of the state, but the records on appeal disclose that such open accounts were due from debtors residing outside the state. In the case of the North American Company a large part of the bills receivable consisted of an account due from an Ohio corporation, and in the Union Sulphur Company Case a very large sum was represented by open accounts due for sulphur sold from the company's mines in Louisiana to customers in the various states, including New York. In each case it was claimed that open accounts due from nonresidents did not represent the employment of capital in this state, although the contracts were made here, and the accounts were payable here in the regular course of business; but the contrary was held by the Comptroller, and his determination was affirmed in the former case, and in the latter in that regard, although his determination was reversed on another ground.

A distinction was made in People ex rel. Rees' Sons v. Miller, 90 App. Div. 592, 86 N. Y. Supp. 193, and it was held by this court that bills receivable for merchandise manufactured and sold out of the state to nonresidents by a *domestic* corporation, and which goods had never come within the state, did not constitute a part of capital employed within this state or form a basis upon which to estimate a franchise tax. In this last case the corporation was a domestic one which had gone out of the state and employed its capital, and in the other cases foreign corporations had come into this state to do business and employ its capital. If there be any conflict between the cases, however, the latter must be deemed to have been overruled by the affirmance by the Court of Appeals in the North American Case, and the later decision of this court in the Union Sulphur Case.

The provisions of section 7 of the Tax Law with respect to the taxing of nonresidents doing business in this state upon the capital invested in such business are quite similar to those contained in section 182 of that law providing for the payment of a franchise tax by a foreign corporation doing business here upon the amount of capital employed therein.

In People ex rel. Yellow Pine Co. v. Barker, 23 App. Div. 524, 48 N. Y. Supp. 553, affirmed 155 N. Y. 665, 49 N. E. 1103, on the prevailing opinion below, the only question involved was whether book accounts due a foreign corporation doing business in this state, for merchandise sold by it in the course of its business here, were properly included as a part of its capital invested in its business in this state, and it was held that they were. This doctrine was reiterated and approved in People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 51 N. E. 1043.

These decisions themselves do not show that the book accounts represented claims against nonresident debtors, but the records on

appeal show such must have been the fact. In the Yellow Pine Company Case, on the hearing before the Commissioners of Taxes and Assessments, the counsel for the city asked what was owing to the company for merchandise sold in the state (meaning, it is assumed, through its place of business in the city of New York). The counsel for the company objected to such inquiry on the ground that open and current accounts could not be regarded as personal property or capital employed in this state because the situs of such intangible assets were at the home office of the corporation in the state of New Jersey, where it was subject to taxation, and where alone equities could be adjusted. This objection was held untenable. It is quite inconceivable that a corporation doing business on the scale that one is shown to have done had no book accounts against parties outside the state of New York.

The same situation was presented in the Armstrong Cork Company Case, with the addition that all the collections from the open accounts after deducting the expenses of the New York office were transmitted to the home office of the corporation in Pennsylvania, where a large part of its regular business was carried on.

The character of the business which renders a nonresident or foreign corporation doing business in this state taxable is discussed in People ex rel. Farcy & Oppenheim Co. v. Wells, 183 N. Y. 264, 76 N. E. 24, and in People ex rel. International Banking Corporation v. Raymond, 117 App. Div. 62, 102 N. Y. Supp. 85, affirmed 188 N. Y. 551, 80 N. E. 1117; but neither of those cases involved the precise question at bar.

The learned judge writing the opinion in the Yellow Pine Company Case concedes that ordinarily intangible property, choses in action, and debts are regarded by a fiction of law as having their situs at the place of residence of the creditor, but points out that those things constituting property which are used for the purposes of trade or business in a particular locality, for all purposes of that trade or business have a situs where they are so used, and concludes that, where goods once within the state are sold on credit, the credit so given is not transferred to the domicile of the foreign corporation, but remains within the state representing for the purposes of taxation the property which had been sold.

In People ex rel. Tower Co. v. Wells, 98 App. Div. 82, 90 N. Y. Supp. 313, affirmed 182 N. Y. 553, 75 N. E. 1132, on opinion below, the office of the foreign corporation in this state was held to be a mere conduit through which goods passed to customers, and the money received therefor was remitted to the home office of such corporation.

In the present case all the moneys collected from residents of other states for advertising in the relator's periodicals were collected by and remained in the New York office and were deposited in the only bank account in that city which the relator possessed. Such moneys were not collected for transmission to the office of the corporation in the state of Maine, for that office was a mere official one and did no business and handled no money. Whenever a foreign ad-

vertiser paid his bill, the money came to the New York office and remained there until again used in business. All of the business of the relator was conducted from that office as though it had no other. All of its advertising contracts were made or approved here and fulfilled by publishing in its various periodicals published and mailed here, and all of its expenses were paid here. There was no attempt to separate the domestic advertiser from the foreign one, or to conduct the local business in any different way from that in which it was conducted for patrons in other states. The business was conducted as an entirety, managed, controlled, and carried on from the New York office, and in our opinion the fact that a large proportion of the claims arising through such business were against nonresidents of the state did not relieve the relator from the imposition of a franchise tax and did not transfer those credits from the state of New York to the domicile of the corporation in the state of Maine.

A large number of foreign corporations have their principal place of business in the city of New York, and the question involved must frequently arise. Although the records of the cases show, as has been pointed out, that current open book accounts due at the business offices of foreign corporations maintained in the state of New York have been taken as a basis for computing the franchise tax of such corporations, perhaps the question has not been so squarely presented as in the present case. The question is an important one in view of the large number of foreign corporations carrying on business in this state. It is because of these facts that we have set forth our views at such length.

[2] It appeared upon the rehearing that there was a small amount of office furniture in some of the advertising soliciting offices throughout the country; but the relator did not prove the value of such furniture with sufficient definiteness so that the Comptroller was able to fix its value. Moreover, in its report the relator claimed no exemption on account of such investment outside the state. Under the circumstances the Comptroller was justified in refusing to allow any exemption on its account.

It follows that the determination of the comptroller should be confirmed, with $50 costs and disbursements. All concur.