Scileppi, J.
Pursuant to CPLR 3222, the parties have stipulated to the following facts:
*116 On May 8, 1961 Consolidated Edison (hereinafter referred to as Con Ed) received from the Tax Commission a notice of assessment amounting to $21,435.09. This represented the balance allegedly due on the franchise tax imposed upon Con Ed’s gross earnings for the quarter ending July 31, 1960, pursuant to section 186 of article 9 of the Tax Law. Con Ed paid the full amount assessed against it, under protest.
On July 31, 1961 Con Ed applied, for a $20,753.36 refund of the amount so paid. The assessment to the extent of $20,753.36 was based on the following receipts :
Cash received by the Company for property damage and insurance claims......
Cash received by the Company from the sale of capital assets no longer employed in its business (emphasis added)
A) . Real Property......
B) . Scrap..............
C) . Used Machinery.....

Amount Tax

$92,898.90 $464.49
2,951,793.76 14,758.97
1,050,450.50 5,252.25
55,530.54 277.65
$4,150,673.70 $20,753.36
The parties also have stipulated that the transactions giving rise to the above receipts were treated as capital transactions; . i.e., none of the receipts was credited to Con Ed’s income account.
Section 186 of the Tax Law provided: ‘ ‘ Every corporation, joint-stock company or association, formed for or principally engaged in the business of supplying water, steam or gas, when delivered through mains or pipes, or electricity, or principally engaged in two or more of such businesses shall pay for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity in this state, a tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this state, and three per centum upon the amount of dividends paid during each year ending on the thirty-first day of October in excess of four per centum upon the actual amount of paid in capital employed in this state by such corporation, joint-stock .company or association, which *117 amount of capital employed in this state shall be found by dividing the gross receipts from all sales made in this state by the gross receipts from all sales wherever made and multiplying the aggregate paid in capital stock by the percentage so found. The term ‘ gross earnings ’ as used in this section means all receipts from the employment of capital without any deduction ”.[1] (Emphasis added.)
In ruling on Con Ed’s application for a refund, the Tax Commission stated: “ (1) That amounts received by the taxpayer for property damage and insurance claims relating to property within New York State, and from the sale of capital assets consisting of real property, scrap and used machinery, located within New York State are receipts from the employment of capital from sources within the state and therefore are taxable gross earnings as defined in Section 186 of the Tax Law. ’ ’
The majority at the Appellate Division disagreed in part, stating: “ the money received by the petitioner as reimbursements for damages to its property and for insurance claims on destroyed or damaged property were not intended by the Legislature to come within its definition of gross earnings. These reimbursements were in no way produced by the petitioner’s capital. Such receipts are not derived from the ‘ employment of capital ’ but from the accidental destruction of capital. The stipulated facts do not indicate whether or not the reimbursements for the damaged property exceeded its cost less depreciation value, that is, whether petitioner has made any profit on paid reimbursements. We will assume, as apparently the parties do, that no profit's were made ”, (23 A D 2d 477, 478-479.)
The majority, however, agreed, citing People ex rel. Westchester Light. Co. v. Gaus (199 N. Y. 147), that the receipts from the sale of real property[2], scrap and obsolete machinery were properly subject to taxation.
*118 The dissenter below was of the opinion that all the receipts were subject to taxation. He stated: “ The wording of the statute is sufficiently inclusive to sustain a finding that cash reimbursements from property damage claims and insurance claims are part of ‘ gross earnings ’ which ‘ means all receipts from the employment of capital without any deduction ’.” (23 A D 2d, p. 480.)
After reviewing the history of section 186 and the cases decided before and after the 1907 amendment, we are of the opinion that none of the receipts from the transactions in question is subject to the franchise tax.
The sole question presented for our consideration is one of statutory construction, to wit, what was the legislative intent in adding ■ the sentence “ The term ‘ gross earnings ’ as used in this section means all receipts from the employment of capital without any deduction ’ ’.
As originally enacted, section 186 provided for a franchise tax upon various types of' utility companies measured by their “ gross earnings from all sources within this state ”. In interpreting the statute in its original form, the Appellate Division held in 1906 that, in order to arrive at taxable “ gross earnings ”, the cost of raw materials used in producing the utility service had to be deducted from the company’s gross receipts (People ex rel. Brooklyn Union Gas Co. v. Morgan, 114 App. Div. 266). We subsequently affirmed without opinion (People ex rel. Brooklyn Union Gas Co. v. Gaus, 195 N. Y. 616 [affg. an unreported Appellate Division decision entered in 1909 upon an oral statement by the Appellate Division that it was bound by its previous 1906 decision (114 App. Div. 266) on the same issue between the same parties]).
Apparently reacting to the decision by the Appellate Division, the Legislature in 1907 amended section 186 by providing a statutory definition for the term ‘ ‘ gross earnings ’ ’. It is important to note that the amendment did not delete the term ‘ ‘ gross earnings ” and substitute a more all-encompassing phrase, but rather sought to define “ gross earnings ” in such a way so as to abrogate the interpretation placed upon the phrase by the Appellate Division in the Brooklyn Union Gas Go. case.
Shortly after the Legislature had amended the statute, a trilogy of cases came to our court to test the effectiveness of the
*119 amendment (People ex rel. Westchester Light. Co. v. Gaus, supra; People ex rel. Consolidated Gas Co. of N. Y. v. Gaus, 199 N. Y. 527; People ex rel. Astoria Light, H. & P. Co. v. Gaus, 199 N. Y. 528). All three cases involved the very same receipts that were in question in the Brooklyn Union Gas Co. case; i.e., none involved the kind of receipts presently before us. In those cases the appellants argued that the amendment did not succeed in changing the statute as formerly construed and that it was still entitled to deduct the cost of raw materials used in manufacturing the utility services. This court rejected the argument finding that, although the amendment was “inartistically expressed ’ ’, the ‘ ‘ statutory amendment followed upon the construction given by the Appellate Division ” in the Brooklyn Union Gas Co. case and, therefore, we could not ‘ ‘ refuse a construction of a statute in accordance with the presumed legislative intent, because clumsily worded ” (199 N. Y., pp. 149-150).
The case at bar is the first to seek further judicial interpretation of the relevant statute since the above trilogy of cases came to our court in 1910. This, however, is easily explained by Con Ed’s unrefuted assertion that the Tax Commission has never before sought to tax receipts arising from the transactions presently before us. While we agree with the majority below that the Tax Commission cannot be estopped from changing an interpretation of a statute (Matter of Marx v. Goodrich, 286 App. Div. 913), we are of the opinion that the failure to tax the type of transactions here involved for 53 years should not he viewed as meaningless, hut rather such inaction should create a presumption in favor of the taxpayer which can only be rebutted by a clear manifestation of legislative intent to the contrary. It is our opinion, and apparently the opinion of the Tax Commission for 53 years, that the Legislature did not intend to tax the transactions here involved.
It is evident that the 1907 amendment did not contemplate a substitution of “ capital” or “ gross receipts” for “ gross earnings ” as the basis for taxation. It merely sought to include that portion 'of capital which the Brooklyn Union Gas Co. case required to be deducted from “ gross earnings ” to arrive at the proper basis. This is only that portion of “ gross earnings ” which represents the “ employment of capital ” to manufacture, distribute and sell various public utility services. The *120 proceeds from the transactions here involved do not represent an “ employment of capital ” at all. Con Ed does not employ its capital for the purpose of having it accidentally damaged or destroyed. It does not employ its capital to construct or purchase facilities so that they can be condemned by governmental authority and appropriated for another use, or so that they can be sold when they are obsolete or sold as scrap when they become inoperative. The proceeds from these transactions represent the amounts realized from the destruction or confiscation of capital, not the employment of it.
Accordingly, the order of the Appellate Division should he modified by reversing so much of that order which confirmed the Tax Commission’s determination allowing the taxation of the transactions involving sales of capital assets and affirming so much of the order which annulled the Tax Commission’s determination as to the receipts for property damage and insurance claims.
Chief Judge Fuld and Judges Burke, Bergan, Keating. Breitel and Jasen concur.
Order modified, with costs to appellant-respondent, in accordance with the opinion herein, and, as so modified, affirmed.

. The last sentence of the statute was added by amendment in 1907 (L. 1907, eh. 734, § 3).

. Included in the sum representing proceeds from the sale of real property was the sum of $451,000 which represented a partial payment for certain property owned by Con Ed that was taken by the United States Government in condemnation. Although .the majority below has drawn a distinction as to the receipts which represent the involuntary destruction of property, they apparently have not drawn a similar distinction as to the involuntary sale of property.