Chief Judge Fuld.
 

 Section 187 of the Tax Law requires title insurance companies to pay a franchise tax on
 
 “
 
 gross direct premiums ” written on risks located in this State. This appeal, here by our permission, requires us to say whether the tax may be levied on fees charged by the petitioner for title examinations made as a preliminary to the issuance of title insurance.
 

 
 *182
 
 Respondent Tax Commission, concluding that fees for title examinations, as well as fees for guaranteed searches and abstracts and other searches, were subject to tax, issued an additional assessment against the petitioner for the year 1962 and, after a hearing, refused its request for a refund.
 
 [1]
 
 In this article 78 proceeding, the Appellate Division agreed with the commission insofar as it imposed a tax on fees for title examinations but modified its determination to eliminate taxes upon charges made for the other services.
 

 This is, as the petitioner stresses, the first time that the Tax Commission has sought to include charges for title examinations in the
 
 “
 
 premiums ” subject to tax under section 187. Although long-standing interpretation is, as a rule, entitled to weight, it is by no means conclusive and does not preclude or estop a governmental agency from changing its prior interpellation when it appears, upon reappraisal, to have been erroneous. (Cf.
 
 Matter of Consolidated Edison Co.
 
 v.
 
 State Tax Comm:,
 
 24 N Y 2d 114, 119;
 
 Matter of Campo Corp.
 
 v.
 
 Feinberg,
 
 279 App. Div. 302, 306, affd. 303 N. Y. 995;
 
 Matter of Marx
 
 v.
 
 Goodrich,
 
 286 App. Div. 913, 914; see, also, 31 C. J. S., Estoppel, § 147, pp. 730-731.) A consideration of past practice and procedure casts light on the problem.
 

 The pre-insurance service in the title insurance field—the title examination by the insurer before it issues a policy— accounts for about three quarters of the entire cost of the insurance.
 
 [2]
 
 Prior to 1962, the petitioner and other title insurance companies in the New York metropolitan area filed with the Superintendent of Insurance, pursuant to section 26 of the Insurance Law, an annual statement in which they listed as separate items of income (1) title insurance premiums earned and (2) service charges, including (a) title examinations, (b) guaranteed searches and abstracts and (c) other searches. More specifically,
 
 *183
 
 the statement simply reported as premiums a flat one tenth of 1
 
 %
 
 of the face amounts of the policies of insurance issued, the difference between the total fees received for the issuance of title policies and the one tenth of
 
 1%
 
 of the face amount of those policies being treated and designated as charges for title examinations and other services. This method of computing the premium is historical, stemming as it does from the early days of the Torrens or Land Title Registration Law (L. 1908, ch. 444), which required the aforementioned percentage to be deposited into an assurance fund to protect those who registered real property titles.
 
 [3]
 
 As a consequence, the title companies reported to the Tax Commission, and paid a tax upon, only that portion of fees received by it labeled ‘ ‘ premiums ’ ’ which, as already indicated, amounted to about one quarter of the total charges for title insurance.
 

 This practice would probably have continued unchallenged but for this court’s 1963 decision in
 
 Matter of City Tit. Ins. Co.
 
 v.
 
 Superintendent of Ins. of State of N. Y.
 
 (13 N Y 2d 686, affg. 16 A D 2d 768, affg. 31 Misc 2d 1012). In that case—which involved a question not of taxes but of regulatory powers of the Insurance Superintendent—the insurer departed from the accepted practice of including charges for title examinations in its manual setting forth the premium rates filed for the Superintendent’s approval. Instead, the City Title Insurance Company’s manual simply recited that its rate was “ $1. per thousand it did this on the ground that the title examination portion of the charge was not ‘ ‘ insurance ’ ’ and, accordingly, was not subject to the Superintendent’s jurisdiction. Special Term rejected the insurance company’s position and, in affirming, this court held that the Superintendent had undoubted authority to regulate the total charge for title insurance.
 

 The
 
 City Title
 
 decision caused the Superintendent of Insurance to review past procedures and, as a result, the Insurance Department and the Tax Commission determined that the cost both of “ insurance ” and of “ title examinations ” was taxable under section 187 of the Tax Law. The two departments also relied on section 550 (subd. 1) and section 46 (subd. 18) of the
 
 *184
 
 Insurance Law.
 
 [4]
 
 The construction given to the legislation and the determination arrived at were confirmed by the Appellate Division, and we agree with its disposition.
 

 In our judgment, the statutory scheme, found partly in the Insurance Law and partly in the Tax Law — and the provisions must be read and construed together (see, e.g.,
 
 Matter of Guardian Life Ins. Co.
 
 v.
 
 Chapman,
 
 302 N. Y. 226, 244) ■—■ supports the conclusion that both the “ cost” of title examination and the
 
 “
 
 premiums ” are subject to a franchise tax. Thus, section 187 of the Tax Law mandates a tax on premiums and section 550 (subd. 1) of the Insurance Law includes in its definition of the term, premium ’ ’, every kind of compensation received as consideration for insurance contracts.
 
 [5]
 
 Beyond that, the statutory definition of
 
 ‘ ‘
 
 title insurance ’ ’ necessarily includes title examinations, encompassing not only
 
 ‘ ‘
 
 insuring the correctness of searches ’ ’ but also the
 
 ‘ ‘
 
 power to procure and furnish information relevant thereto ”.
 

 It is not irrelevant to point out that a tax on insurance premiums is analogous to a tax on the ‘ ‘ net income ’ ’ of other types of business corporations (Tax Law, § 209). If title insurance companies were to be permitted to exclude from their ‘ ‘ gross direct premiums ” title examination charges — accounting, as they do, for more than three quarters of the cost and expense of the policy—they would enjoy a large amount of income which would not be taxed. (Cf., e.g.,
 
 Matter of Guardian Life Ins. Co.
 
 v.
 
 Chapman,
 
 302 N. Y. 226, 236,
 
 supra.)
 
 In consequence, these
 
 *185
 
 companies would escape a fair share of taxes imposed on other types of insurance and noninsurance business corporations for the privilege of doing business in New York (Tax Law, §§ 187, 209).
 

 In sum, then, the relevant statutes, as well as their underlying rationale, strongly confirm the Tax Commission’s conclusion that title insurance companies must pay a franchise tax based upon the entire cost of the policy, both the “ risk ” and the ‘‘ title examination ’ ’ portions of the premium.
 

 The order appealed from should be affirmed, with costs.
 

 Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
 

 Order affirmed.
 

 [1]
 

 . It was the commission’s determination that the petitioner was subject to a total assessment of $70,924.08, based on additional unreported premiums of $3,546,204.34.
 

 [2]
 

 . The total fee charged for the policy is paid once and for all time, the risk insured against being not the happening of a future event but the uncovering of a past defective condition of title which had escaped detection in the title examination.
 

 [3]
 

 . This procedure is still provided for today by section 426 of the Real Property Law.
 

 [4]
 

 . Subdivision 1 of section 550 provides, in part, that:
 

 “ ‘
 
 Premium ’ includes all amounts received as consideration for insurance contracts * * * and shall include premium deposits,
 

 assessments, policy fees, membership fees, and every other compensation for such contract.”
 

 The other provision, subdivision 18 of section 46, recites that:
 

 “ ‘
 
 Title insurance,’ meaning insuring the owners of real property * * * against loss by reason of defective titles * • * and
 

 insuring the correctness of searches for all instruments * * * affecting the title to such property, including the power to procure and furnish information relative thereto ”.
 

 [5]
 

 . Indeed, the policies of title insurance issued by the petitioner, as well as by other companies, actually recite that titles are insured “ in consideration of the payment of * *
 
 *
 
 charges for examination of title and of the premium ”,