OPINION OF THE COURT
Jones, J.
 The fact that it had ruled in 1966 that services performed under certain elevator maintenance contracts were not subject to State sales tax did not preclude the State Tax Commission from making a prospective declaratory ruling in 1977 that services rendered under similar contracts were subject to such tax. Petitioner, a domestic membership corporation of escalator and elevator maintenance and construction companies at whose instance the declaratory ruling had been issued, had standing in this article 78 proceeding to seek judicial review of the commission’s declaratory ruling.
The substantive issue arises under the provisions of section 1105 (subd [c], par [5]) of the Tax Law:
"§ 1105. Imposition of sales tax
"On and after June first, nineteen hundred seventy-one, there is hereby imposed and there shall be paid a tax of four percent upon:
* * *
"(c) The receipts from every sale, except for resale, of the following services:
* * *
"(5) Maintaining, servicing or repairing real property, property or land, as such terms are defined in the real property *544 tax law, whether the services are performed in or outside of a building, as distinguished from adding to or improving such real property, property or land, by a capital improvement, but excluding services rendered by an individual who is not in a regular trade or business offering his services to the public, and excluding interior cleaning and maintenance services performed on a regular contractual basis for a term of not less than thirty days, other than window cleaning, rodent and pest control and trash removal from buildings.”
On December 6, 1966 the Commissioner of Taxation and Finance of the State of New York issued a ruling that standard elevator and escalator maintenance contracts were "contracts for interior maintenance for a term of not less than thirty days” and that services performed pursuant to such contracts were therefore exempt from New York State sales tax (CCH, 2 NY Tax Rep, par 60-135.31). As a consequence of this ruling no sales taxes were collected from 1966 to 1976 by the members of National Elevator Industry, Inc. (NEII), for services performed under long-term elevator and escalator maintenance contracts.
On August 26, 1976 new regulations were promulgated by the Tax Commission, effective September 1, 1976, interpreting paragraph (5) which raised questions among members of NEII as to a possible change in the position of the commission with respect to the taxability of receipts from services performed pursuant to such long-term contracts (20 NYCRR 527.7). On November 11, 1976 NEII, through its counsel, wrote the Tax Commission for clarification concerning the application of the new regulations. On January 19, 1977 the commission responded, inviting submission of a formal request for a declaratory ruling under the State Administrative Procedure Act and giving assurance that no new tax liability would be asserted pending issuance of the declaratory ruling.
On February 11, 1977 formal request was made on behalf of NEII for a declaratory ruling pursuant to section 204 of the State Administrative Procedure Act with respect to seven standard forms of maintenance contracts. On July 28, 1977 the commission issued Declaratory Ruling 77-01 (CCH, 2 NY Tax Rep, par 60-135.30) which declared that services performed under three of the standard form contracts (so-called "Type I” contracts) were tax exempt but that services rendered under the other four standard form contracts (so-called "Type II” contracts) would be taxable. The distinction between *545 Type I and Type II contracts was based on the extent of the obligation to repair in the contracts. The commission expressly declared that the ruling would be applicable only to services rendered on and after September 1, 1977, although the contract therefor might have been entered into prior to that date. On August 24, 1977 the commission denied an informal request for reconsideration of its ruling, inviting attention to the fact that "the normal avenues of attack through the courts are open to you”.
The present proceeding was thereupon instituted under article 78 by NEII and Westinghouse Electric Corporation, a Pennsylvania corporation engaged in performing escalator and elevator maintenance services in New York State, three of whose standard form contracts had been the subject of Declaratory Ruling 77-01 (one having been held exempt as a Type I contract and the other two having been held taxable as Type II contracts). The Tax Commission moved to dismiss the petition under CPLR 3211 on the grounds that NEII did not have legal standing to sue, that article 78 relief was unavailable because an exclusive remedy was provided by sections 1138, 1139 and 1140 of the Tax Law, and that the petition failed to state a cause of action because no question was posed as to liability for specific amounts of tax or tax refunds. Supreme Court granted the motion and dismissed the petition. On appeal the Appellate Division converted the proceeding under CPLR 103 (subd [c]) to an action for declaratory judgment and directed a declaration in petitioners’ favor. We now reverse and direct dismissal of the proceeding, upholding the validity of Declaratory Ruling 77-01.
At the threshold there is some procedural brush to be cleared away. First, because it is a bona fide organization representing taxpayers whose interests are directly affected by the declaratory ruling, NEII has legal standing in the present proceeding (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1).
Second, a proceeding under CPLR article 78 is the proper procedural vehicle for obtaining judicial review of Declaratory Ruling 77-01. Indeed, it is precisely the procedure contemplated by the statute which makes provision for declaratory rulings. The State Administrative Procedure Act was adopted in 1975, effective September 1, 1976 (L 1975, ch 167). Sections 204 and 205 of that act provide as follows:
"§ 204. Declaratory rulings by agencies
*546 "On petition of any person, any agency may issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it. Each agency shall prescribe by rule the form for such petitions and the procedure for their submission, consideration and disposition. A declaratory ruling shall be binding upon the agency unless it is altered or set aside by a court. The agency may not retroactively change a valid declaratory ruling, but nothing in this section shall prevent an agency from prospectively changing any declaratory ruling. A declaratory ruling shall be made available to the public. A declaratory ruling shall be subject to review in the manner provided for in article seventy-eight of the civil practice law and rules.
"§ 205. Right to judicial review of rules
"Unless an exclusive procedure or remedy is provided by law, judicial review of rules may be had upon petition presented under article seventy-eight of the civil practice law and rules, or in an action for a declaratory judgment where applicable and proper. The agency shall be made a party to the proceedings. Such a special proceeding or action may not be maintained unless the petitioner has first requested the agency to pass upon the validity or applicability of the rule in question and action has been taken upon such a request or more than thirty days has elapsed since such request has been filed and no final action has been taken thereon or the agency has not provided for the issuance of such declaratory rulings under section two hundred four. Unless the agency acts upon such request within thirty days of its filing, such request shall be deemed to have been denied. Nothing in this section shall be construed to grant or deny to any person standing to petition under article seventy-eight of the civil practice law and rules or to bring an action for a declaratory judgment or to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is properly asserted.”
Implementing regulations were immediately promulgated by the State Tax Commission (20 NYCRR 900.2). Inasmuch as the commission itself expressly invited a request for a declaratory ruling under the State Administrative Procedure Act and both the eventuating request and the consequent declaratory ruling referred explicitly to section 204, the assertion now that no judicial review lies because sections 1138, 1139 and 1140 of the Tax Law provide the exclusive procedural remedy can *547 only be characterized as captious.[1] Section 204 expressly provides in its last sentence that a "declaratory ruling shall be subject to review in the manner provided for in article seventy-eight of the civil practice law and rules”. Accordingly it was error to convert this proceeding from one under article 78 to an action for a declaratory judgment, as was done; it is properly an article 78 proceeding.
It may be noted that section 205 contemplates judicial scrutiny in an article 78 proceeding or in an action for a declaratory judgment. Section 205, however, relates only to judicial review of "rules”, not "declaratory rulings” which are the subject of section 204, and "rules” are expressly defined as not including "rulings issued under section two hundred four” (State Administrative Procedure Act, § 102, subd 2, par [b], cl [iii]). Similarly the defense based on the availability of “an exclusive procedure or remedy * * * provided by law” (for which purpose the Tax Commission seeks to invoke the provisions of sections 1138, 1139 and 1140 of the Tax Law)[2] is available under section 205 but not under section 204.
We turn then to the merits and confront the two challenges which petitioners aim at the Tax Commission’s 1977 ruling— first, that the commission is precluded in consequence of its 1966 ruling from now making what is perceived as an inconsistent ruling and, second, that in any event the 1977 ruling is at variance with the taxing statute. For the purposes of our consideration of the first contention we may assume that the 1966 and the 1977 rulings are indeed inconsistent inasmuch as they involve substantially similar maintenance contracts and reach opposite conclusions. At the outset, in addressing this challenge, we note that the commission’s 1977 ruling is expressly made prospective only, i.e., relating solely to services rendered on and after September 1, 1977. Thus, we are not confronted with problems which might arise from the retroactive application of an inconsistent ruling.
We know of no rule of law (surely there is no constitu *548 tional proscription) against altered or inconsistent prospective rulings in the administration of tax laws.[3] Indeed the administration of tax laws would be unacceptably hobbled were there any such inhibiting rule of law. The taxing authorities are not to be foreclosed from the rational application for the future of shifts in understandings of the economic realities of underlying transactions, of movement in the judicial reading of legislative enactments or of other forms of new wisdom born of experience.[4] Indeed with the enactment of the State Administrative Procedure Act in 1975 the Legislature expressly recognized the authority of administrative agencies of State government to change rulings prospectively: "[N]othing in this section shall prevent an agency from prospectively changing any declaratory ruling.” (§ 204.)
Nor is there any substance to petitioners’ principal contention that in consequence of the re-enactment of section 1105 of the Tax Law in 1969 (L 1969, ch 116, § 1), the 1966 ruling became so embedded in the law that only the Legislature could effect a change.[5] It boggles the mind to contemplate the implications of any doctrine that the re-enactment of a taxing statute to set a new rate of tax and to fix the date on which the new rate becomes effective operates inexorably to freeze all outstanding interpretive rulings by the agency administering the tax! To describe such a doctrine is to expose its unworkability. (Cf. Matter of Del Giorno v Police Dept. of City of N. Y., 33 AD2d 665.)
As the Supreme Court of the United States has pointedly observed with respect to the administration of Federal taxes: "The oft-repeated statement that administrative construction receives legislative approval by reenactment of a statutory provision, without material change [citation omitted] covers *549 the situation where the validity of administrative action standing by itself may be dubious or where ambiguities in a statute or rules are resolved by reference to administrative practice prior to reenactment of a statute; and where it does not appear that the rule or practice has been changed by the administrative agency through exercise of its continuing rule-making power. It does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers. [Citation omitted.] The contrary conclusion would not only drastically curtail the scope and materially impair the flexibility of administrative action; it would produce a most awkward situation. Outstanding regulations which had survived one Act could be changed only after a pre-view by the Congress. In preparation for a new revenue Act the Commissioner would have to prepare in advance new regulations covering old provisions. Their effectiveness would have to await Congressional approval of the new Act. The effect of such procedure, so far as time is concerned, would be precisely the same as if these new regulations were submitted to the Congress for approval. Such dilution of administrative powers would deprive the administrative process of some of its most valuable qualities — ease of adjustment to change, flexibility in light of experience, swiftness in meeting new or emergency situations. It would make the administrative process under these circumstances cumbersome and slow. Known inequities in existing regulations would have to await the advent of a new revenue act. Paralysis in effort to keep abreast of changes in business practices and new conditions would redound at times to the detriment of the revenue; at times to the disadvantage of the taxpayer. Likewise the result would be to read into the grant of express administrative powers an implied condition that they were not to be exercised unless, in effect, the Congress had consented.” (Helvering v Wilshire Oil Co., 308 US 90, 100-101.)
Finally, then, we address the validity of Declaratory Ruling 77-01 (and to some extent the validity of subdivision [c] of regulation 527.7) under section 1105 (subd [c], par [5]) of the Tax Law as if there had been no previous ruling. That paragraph imposes a sales tax on services performed in "[maintaining, servicing or repairing” buildings but excludes from the tax "interior cleaning and maintenance services” *550 performed on a long-term contractual basis "other than window cleaning, rodent and pest control and trash removal”. Services involving "repairs”, while included in the provision imposing the tax, are not likewise expressly identified in the exclusion clause. The commission has ruled, on the basis of the Direen case (46 AD2d 191), that "repair services of a limited and simple nature”[6] are to be classified as within the category of "maintenance services” and are thus exempt from the sales tax. On the other hand, services under contracts calling for more substantial repairs[7] do not come within the exclusion. This ruling appears to reflect a rational and reasonable application of the distinction set out in the statute.
Finally, we note that there is no merit to the assertion that the distinction drawn by the commission between taxable and nontaxable contracts contravenes the constitutional right to equal protection (cf. Lehnhausen v Lake Shore Auto Parts Co., 410 US 356; Allied Stores of Ohio v Bowers, 358 US 522).
For the reasons stated the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court dismissing the petition reinstated.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. After inviting NEII to seek the declaratory ruling and then advising it that the normal avenues of review in the courts were open to it, it similarly ill becomes the Tax Commission to challenge NEII’s legal standing in the present proceeding.

. In any event, these sections relate to remedies "for the review of tax liability”. The present proceeding does not seek review of any determination of tax liability; rather it seeks judicial review of a declaratory ruling on the basis of which petitioners understandably anticipate that subsequent determinations of tax liability will be made.

. To the extent that Matter of Consolidated Edison Co. of N. Y. v State Tax Comm. of State of N. Y. (24 NY2d 114, 119) may be read as approving another rule it is rejected.

. In the present instance, what may be termed the change of position on the part of the Tax Commission appears to have been triggered in part, at least, by the opinion of the Appellate Division, Third Department, in December, 1974 implying that the exemptive language found in section 1105 (subd [c], par [5]) did not operate to exempt all repair services (Direen Operating Corp. v State Tax Comm., 46 AD2d 191). We are told that it was in consequence of the opinion in that case that the new regulations were issued in 1976.

. In passing we observe that this is not an instance in which the administrative agency cites legislative re-enactment subsequent to the promulgation of administrative regulations to sustain their validity.

. The services described in this category in Direen were occasionally releasing a stuck window or replacing a washer in a leaky faucet (46 AD2d 191,193).

. In the latter category are included contracts which contain an obligation to repair or replace "stairway machines, step chains, main drive chains, handrail drive chains, tracks, controllers, sprockets and parts thereof, including: drive motors, worms and gears, bearings, rotating elements, brake magnet coils, brake shoes and linings, windings and coils, contacts and relays, resistors and transformers, and solid state devices”, or “stop buttons, brake on main drive sprocket, slack step chain switches, skirt safety switches, governor switches, step treads, combplate finger sections, handrails and handrail guides”. (Declaratory Ruling 77-01.)