In the Matter of AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, April 7, 1983

**APPEARANCES OF COUNSEL**

*Howard J. Trienens, Martin J. Eisen* and *Clarin S. Schwartz* (*Martin J. Eisen* of counsel), and *Paul, Weiss, Rifkind, Wharton & Garrison* for petitioner.

*Robert Abrams, Attorney-General (Wayne L. Benjamin* and *William J. Kogan* of counsel), for respondent.

MIKOLL, J.

Petitioner is incorporated in New York State as a transmission company. Its principal executive offices are located in New York City where its corporate records are maintained. Petitioner is the parent company of a group of subsidiary corporations known as the Bell System. It also owns 195 Broadway Corporation, a New York corporation.

Petitioner, through its Long Lines Department (a division of petitioner), operated a network of cable, wire and radio circuits and related equipment to provide for interconnection among the communications systems of its telephone subsidiaries and other communication systems in the United States and for interconnection with those in most other countries throughout the world. It was not involved in intrastate telephone transmissions in New York. Its subsidiaries provided local and toll service in the areas in which they operated and furnished interstate toll service to outside areas through interconnection with petitioner's Long Lines Department and other telephone companies.

Petitioner's General Administrative Department provided administrative, financial, legal, executive, budgetary and related services to it and to its subsidiaries. From 1969 through 1972 petitioner had an agreement with each of its subsidiaries under which it furnished them with advice and assistance in general engineering, plant, traffic, operating, commercial, accounting, patent, legal, administrative and other matters pertaining to the conduct of their business. Petitioner also agreed to furnish financial assistance and advice, aid in securing funds for construction and other expenditures, assistance in marketing the subsidiaries' securities, and other financial support and assistance as would serve the interests of petitioner and each respective subsidiary. The subsidiaries paid petitioner 1% of their gross earnings in consideration of petitioner's undertakings and commitments.

In conformity with the agreement between them, petitioner regularly went to the financial market to raise the capital needed by the Bell System for its construction needs. Moneys not immediately used were invested temporarily in the most advantageous short-term securities. Petitioner's Treasury Department, located in New York City, managed these investments and made all decisions relevant thereto. There was a constant flow of communication between petitioner's Treasury Department and the subsidiaries to take advantage of the best possible uses of the idle funds. Some of the borrowed funds were specifically restricted for use by out-of-State subsidiaries. Petitioner was actively engaged in investing in its subsidiaries and in financially protecting their mutual financial stability.

Petitioner owned all shares of 16 of its telephone subsidiaries, a majority interest in five others and a minority interest in two. None of these subsidiaries, except for New York Telephone Company, did business in New York State or owned property here. Two other subsidiaries owned by petitioner had property in New York; Western Electric Co., Inc. and 195 Broadway Corporation. Petitioner's physical property in New York State was devoted to interstate business, and petitioner was subject to the jurisdiction of the Federal Communications Commission.

Petitioner paid no franchise or other tax to any other State with respect to the advances it made to its subsidiaries. The subsidiaries paid franchise or other taxes, based in whole or in part on a property factor, to the States in which their property was located. Petitioner paid taxes on a portion of its income, including interest from the advances to its subsidiaries and from "Temporary Cash Investment" items, allocated to each State based on formulas which reflect property, payroll, sales or receipt factors or a combination thereof attributable to each State. In California, petitioner paid taxes under a combined report which reflects elimination of interest income from subsidiaries in which petitioner owned more than 50% of stock.

Petitioner regularly advanced sums of money to all of its subsidiary companies, except New York Telephone Company, in order to assist the subsidiaries in the huge con-

struction expenditures and in other operations of their businesses. These advances were mostly evidenced by demand notes bearing interest, and in the case of one subsidiary (Cincinnati Bell, Inc.), advances were on open accounts payable within 10 days of demand or, in any event, within 12 months from the loan date. The notes were maintained by petitioner at 195 Broadway Corporation in New York City. Petitioner made advances to 195 Broadway Corporation without interest. This company owns assets within and without the State but the advances were used almost exclusively in its out-of-State activities.

Petitioner also purchased stock from its subsidiaries and the proceeds realized from such sales were used by the subsidiaries to repay the outstanding advances.

Petitioner filed annual tax returns for 1970 through 1973, calculating its franchise tax on capital stock under section 183 of the Tax Law (hereinafter capital stock tax), and made quarterly reports of franchise taxes on gross earnings under section 184 of the Tax Law (hereinafter gross earnings tax) for periods ending December 31, 1969 through December 31, 1972.

Petitioner challenges the findings of the State Tax Commission which held that the following items were gross assets employed in petitioner's business in New York State for purposes of the capital stock tax:

(1) amounts advanced by petitioner to its out-of-State subsidiaries and to 195 Broadway Corporation,

(2) interest receivable from such advances,

(3) items in Account 116 which were temporary cash investments of assets borrowed by petitioner for advances to its subsidiaries but which were not immediately needed for such purposes,

(4) accrued interest from the temporary cash in investments, and

(5) dividends receivable by petitioner from subsidiaries employing their assets in New York State.

Petitioner also challenges the finding that interest received by it in connection with its advances and interest in connection with certain items in Account 116 were earn-

ings from sources within New York for purposes of the gross earnings tax. Petitioner contends that the State may only tax income from sources within New York under the gross earnings tax (Tax Law, § 184).

A challenge made to the imposition of taxes will fail if the interpretation of the statute made by the Tax Commission is not irrational or unreasonable (see *Matter of Howard v Wyman,* 28 NY2d 434).

Section 183 of the Tax Law provided, in pertinent part:

"1 * * * For the privilege of exercising its corporate franchise, or of holding property in this state every domestic corporation * * * shall pay * * * an annual tax to be computed upon the basis of the amount of its capital stock within this state * * *

"2 The measure of the amount of capital stock in this state * * * shall be such a portion of the issued capital stock as the gross assets * * * employed in any business within this state, bear to the gross assets * * * wherever employed in business."

■ Respondent determined that petitioner's substantial financial activities in New York were a part of its business conducted within the State and, therefore, taxable in New York State under section 183 of the Tax Law. We find that such determination must be upheld. Petitioner challenges the determination contending that the mere situs of the instruments representing obligations in New York State is not enough to infer that these are assets employed in business in this State. While we concur with this observation, we find that the commission's determination is not grounded on an isolated finding of situs of the assets but is focused rather on the vigorous exercise of the investment function in New York State by petitioner and the employment of assets within New York for that purpose.

Although petitioner's principal activity is undoubtedly that of a transmission company, in furtherance of such business, petitioner conducted, as an adjunct thereto, the business of investing in funds of its subsidiary companies by way of stock ownership and loans to them. Petitioner exercised extensive management, control and utilization of its intangibles in New York and such activity was an

integral and substantial part of the business it conducted in the State. The commission's determination is supported by legal precedent (see *People ex rel. Manila Elec. R. R. & Light. Corp. v Knapp,* 229 NY 502; *People ex rel. Tobacco & Allied Stocks v Graves,* 250 App Div 149, affd 277 NY 723; *People ex rel. Manhattan Silk Co. v Miller,* 125 App Div 296; *People ex rel. North Amer. Co. v Miller,* 90 App Div 560; *People ex rel. Brooklyn Rapid Tr. Co. v Miller,* 85 App Div 178, affd 181 NY 582; *People ex rel. New England Loan & Trust Co. v Roberts,* 25 App Div 16).

Petitioner contends that there is no valid reason to differentiate between the loans it made to its subsidiaries and investments in them in the form of stock ownership which are not taxable under the capital stock tax. We note that the Legislature has specifically provided that the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the assets of the issuing corporation are located (Tax Law, § 183, subd 2). There is no like provision treating loans in such a way.

Petitioner additionally challenges the treatment of advances made to 195 Broadway Corporation, a wholly owned subsidiary, as assets of petitioner for purposes of the capital stock tax. It urges that this corporation was a New York corporation and the moneys advanced to it were used to acquire and construct real estate complexes in New Jersey. The commission treated the advances to it in the same manner as advances to petitioner's other out-of-State subsidiaries and we concur with this determination. The same considerations applicable to petitioner's advances to its out-of-State subsidiaries apply here as well.

Petitioner's challenge to the inclusion of interest receivable as assets for purposes of the capital stock tax is not supportable. Interest receivable was a part of the financial assets held, managed and controlled by petitioner in New York and, as such, constituted an important aspect of petitioner's financial picture which made possible the successful conduct of its financial business. The same considerations apply as to the commission's treatment of dividends receivable as assets. These, too, enhanced petition-

er's financial position and made possible petitioner's financial dealings.

Turning next to petitioner's challenge to the treatment of Account 116, the temporary cash investment of funds borrowed for advances, we concur that these, too, constituted assets employed in petitioner's financial dealings in New York. These were an indispensable part of petitioner's financial activity. Petitioner employed a full-time staff to profitably manage the investments so as to realize the highest yield, which in turn facilitated petitioner's business in New York. Assets used to facilitate a business are of necessity business assets.

■ Turning now to petitioner's challenge to the franchise tax imposed on it for gross earnings pursuant to section 184 of the Tax Law, the statute, as then in effect, stated, in pertinent part: "1. Every corporation * * * formed for or principally engaged in the conduct of * * * telegraph, tele-phone * * * and every other corporation * * * formed for or principally engaged in the conduct of a * * * transmission business * * * shall pay for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity in this state, an excise tax * * * upon its gross earnings from all sources *within this state,* excluding earnings derived from business of an interstate character"* (emphasis added). A review of the record reveals that the determination of the commission in interpreting section 184 of the Tax Law is not supported by substantial evidence.

We had occasion to note in *Matter of Overseas Nat. Airways v State Tax Comm.* (91 AD2d 162), "[t]he statute in question in plain language taxes earnings from sources within the State and excludes earnings from interstate commerce". This holding is dispositive here. The commission's determination that interest payments received by petitioner on its advances to its out-of-State subsidiaries constituted gross earnings from a source within the State is clearly in error. The interest was paid to petitioner by its out-of-State subsidiaries and came from out-of-State sources. The commission has incorrectly attempted to im-

---

* Section 184 was amended in 1981 to delete the exclusion of earnings of an interstate character (L 1981, ch 486).

pose a tax based not on the source of income but on where assets giving rise to the interest were employed. This interpretation contravenes the clear import of the meaning of "source". Common words are to be given their commonly understood meaning (*Matter of Steinbeck v Gerosa,* 4 NY2d 302, app dsmd 358 US 39).

We note, too, as relevant to a consideration of this issue, that the State Tax Commission has here disregarded its own interpretation of virtually identical language in section 186-a (subd 2, par [c]) of the Tax Law (see 20 NYCRR 501.13 [b]). It is settled that statutes which are *in pari materia* must be construed with reference to each other (McKinney's Cons Laws of NY, Book 1, Statutes, § 221, p 374). These two statutes are clearly *in pari materia* with respect to the taxation of interest income. We conclude then that the commission's own interpretation supports the conclusion that the interest income in issue here should be excluded from petitioner's gross earning as not being from sources within the State of New York.

Petitioner contends that the commission's determination in the instant cases poses a change in the long-standing interpretation of the statutory provisions involved and thus contravenes the proposition that such circumstances give rise to a presumption in favor of the taxpayer which can only be rebutted by a clear manifestation of legislative intent to the contrary and is prohibited by such cases as *Matter of Consolidated Edison Co. of N.Y. v State Tax Comm. of State of N.Y.* (24 NY2d 114, 119) and *New York State Cable Tel. Assn. v State Tax Comm.* (59 AD2d 81, 83). We conclude that the determination regarding the capital stock taxes is not a reversal of a long-standing interpretation espoused by the agency, but rather a correction, upon reappraisal, of an erroneous interpretation of the law or an oversight in its prior administration. There is no legal prohibition against such reassessment (see *Matter of National Elevator Ind. v New York State Tax Comm.,* 49 NY2d 538).

■ Lastly, petitioner contends that respondent's interpretation of subdivision 2 of section 183 of the Tax Law, which includes advances made to out-of-State subsidiaries as part of the gross assets of petitioner employed in this

State, violates the commerce clause in the Federal Constitution (US Const, art I, § 8) in that it is an unfair apportionment of assets to the State. The tax levied here is measured by such portion of the issued capital stock as the gross assets employed in any business in this State bear to the gross assets used anywhere in business. Thus gross assets are simply one of the factors utilized in the formula used to determine the amount of capital stock within the State. There is no evidence here of an unfair apportionment of assets to New York State. The statute validly taxes the doing of business of a New York corporation within the State (*Ford Motor Co. v Beauchamp,* 308 US 331, 335). The possibility of multiple taxation does not require a holding that New York State is prohibited from imposing its capital stock tax (see *State Tax Comm. v Aldrich,* 316 US 174, 181-182).

The determination should be modified by annulling so much thereof as imposed a gross earnings tax on income received from out-of-State obligors, and, as so modified, confirmed, without costs.

YESAWICH, JR., J. (concurring in part and dissenting in part). While I subscribe to the majority's reasoning in invalidating the taxes imposed pursuant to section 184 of the Tax Law, I would annul the commission's determination in its entirety. In my view, the capital stock tax assessment under section 183 of the Tax Law, dictating an additional burden on petitioner of approximately $12.5 million in taxes and interest, was also improper.

This case is controlled by *Matter of Consolidated Edison Co. of N. Y. v State Tax Comm. of State of N. Y.* (24 NY2d 114) where, in construing the franchise tax under section 186 of the Tax Law, the commission's long-standing policy of not taxing, as capital employed in the State, insurance recoveries and the proceeds from certain sales, was seen as creating a presumption of nontaxability. There the court refused to invoke the doctrine of estoppel against the State but went on to declare (p 119): "we are of the opinion that the failure to tax the type of transactions here involved for 53 years should not be viewed as meaningless, but rather such inaction should create a presumption in favor of the

taxpayer which can only be rebutted by a clear manifestation of legislative intent to the contrary".

Petitioner has been filing capital stock tax reports under section 183 and its predecessors since 1888. In 1909, in an opinion apparently of continuing validity, the Attorney-General stated that capital loaned for use in business in other States was not employed in any business in the State of New York and thus could not be taxed under the predecessor to section 183 (1909 Opns Atty Gen 357). And in 1923, the last time petitioner's capital stock tax report was audited, the commission found no error when the company failed to include, as capital employed in business within the State, transactions of the very type now found taxable. Without contradiction, petitioner alleges that for half a century it has faithfully adhered to the characterization accepted at the time of the 1923 audit. That being so, *Matter of Consolidated Edison (supra)* makes it incumbent upon the commission to demonstrate a clearly manifested legislative intent that petitioner's advances, interest and receivables should be taxed under section 183. No such proof has been offered; in fact, the Legislature has seen fit to leave undisturbed the applicable sections of the statute even though, over the years, section 183 has been frequently revised. For the same reasons, the completely new depiction of petitioner as a "finance" company to bring the advances arguably within the ambit of section 183, though a tribute to the indefatigable zeal with which the search for additional taxes is being pursued, should not be entertained.

Respondent's suggestion that *Matter of National Elevator Ind. v New York State Tax Comm.* (49 NY2d 538) negates this presumption in favor of the taxpayer is not at all convincing. *National Elevator* found the presumption inapplicable when the commission was attempting to change a ruling *prospectively (supra,* at p 548; *Metromedia, Inc. v State Tax Comm. of State of N. Y.,* 75 AD2d 341, 342). Here, a retroactive change in interpretation, not mandated by the statute on its face, and one generating an enormous tax liability, is involved.

Nor can the commission's unilateral decision to tax these transactions for the first time be justified as the correction

of an "erroneous" statutory interpretation. More often than not, in those instances where the commission has altered its position, it was prompted to do so by recent developments such as a new judicial interpretation (*Matter of Inter-County Tit. Guar. & Mtge. Co. v State Tax Comm.,* 28 NY2d 179) or a negotiated increase in the taxpayer's Federal tax assessment (*Matter of Petrie Stores Corp. v Tully,* 80 AD2d 328). On those occasions when there apparently was no external impetus for the commission's new interpretation, either a comparatively brief period of time had elapsed between the conflicting rulings or the change did not result in an obvious injustice (see *Matter of Liberty Coaches v State Tax Comm.,* 79 AD2d 775; *Matter of Sachs N. Y. v Tully,* 79 AD2d 1056). Furthermore, in these instances, the transactions at issue were indisputably taxable under the applicable statutory language.

Given the long history of the commission's undeviating interpretation of this statute and petitioner's unchallenged compliance, allowing the commission to retroactively alter that interpretation without first affording petitioner an opportunity to restructure its affairs so as to minimize the immense tax consequences is, in my judgment, patently unfair.

KANE, J. P., and MAIN, J., concur with MIKOLL, J.; YESAWICH, JR., J., concurs in part and dissents in part in an opinion; LEVINE, J., not taking part.

Determination modified by annulling so much thereof as imposed a gross earnings tax on income received from out-of-State obligors, and, as so modified, confirmed, without costs.