OPINION OF THE COURT
Meyer, J.
A New York transmission company which provides telephone and other communication service throughout the continental United States through subsidiary corporations but carries on in New York the financial studies necessary *397 to meet the capital requirements of the subsidiaries, is subject to the franchise tax imposed by section 183 of the Tax Law on capital stock measured by “gross assets * * * employed in any business within this state” on money advanced to subsidiaries and on cash temporarily invested pending such advances. It is, however, not taxable under that section on interest or dividends receivable from, but not yet paid by, the subsidiaries. Nor is the company subject to the franchise tax imposed by section 184 of the Tax Law on “gross earnings from all sources within this state” on interest received by it from out-of-State subsidiaries or out-of-State obligors on such temporary investments, notwithstanding its financial operations in New York. The judgment of the Appellate Division should, therefore, be modified to annul so much of the State Tax Commission’s determination as imposed section 183 capital stock tax upon interest and dividends receivable from, but not yet paid by, subsidiaries and, as so modified, should be affirmed, without costs.
I
Involved in this appeal are the tax returns under sections 183 and 184 of the Tax Law of American Telephone and Telegraph (AT&T) for the years 1969 through 1972. The facts have been stipulated. AT&T is incorporated in New York as a transmission company and maintains its principal offices in New York City in a building owned by 195 Broadway Corporation, a wholly owned subsidiary. It does no intrastate communication business in New York, but through some 23 subsidiaries, in 21 of which it owns either the entire stock or a majority interest, it operates a communications network throughout the continental United States which interconnects with communication systems in most other countries throughout the world.
Under its license agreement with the various subsidiaries in effect during the period in question AT&T agreed, in return for 1% of the subsidiary’s gross earnings, to conduct research in telephony and make the results available to the subsidiary, to furnish advice and assistance to it in general engineering, plant, traffic, operating, commercial, accounting, patent, legal, administrative and other matters, and with respect to finances of the subsidiary to *398 furnish advice and assistance, to aid in securing funds on fair terms, to assist actively in marketing the subsidiary’s securities, and to give other necessary financial support and assistance.
To support its own and the subsidiaries’ need for funds, AT&T offered its own securities in the financial market. The funds raised, to the extent not immediately required by the needs of the system, were temporarily invested by AT&T in short-term securities, the turnover in the temporary cash investment account in each of the years in question being in excess of $5,000,000,000 and the year-end balance in all but one of the years approximating $1,000,000,000. Management of these funds was carried out by a full-time AT&T treasury department staff, which prepared and reviewed investment plans, maintained day-to-day contact with the subsidiaries with regard to funds needed or to be repaid, and made all required decisions. A portion of the temporary investment account was segregated for use outside New York State. Advances to or investments in subsidiaries outside New York in 1970, 1971 and 1972 were between $1,500,000,000 and $2,000,000,000.
AT&T advanced money to all of its subsidiaries other than New York Telephone Company. Advances were all interest bearing and, with two open account exceptions, were evidenced by demand notes, custody of which was maintained by AT&T’s treasury department in New York. Advances were also made to 195 Broadway Corporation, which used the advances principally in New Jersey. The subsidiaries sold stock either to AT&T or to others and from the proceeds of such sales repaid the advances received from AT&T.
AT&T’s capital stock tax returns have since 1923 or before treated advances to subsidiaries as assets employed in New York only to the extent that a subsidiary’s assets were allocated to New York and have treated temporary investments as pre-employment capital rather than assets employed in New York. Its capital stock tax return for 1924 has had annexed a statement reading as follows: “The company operates long distance telephone lines throughout the United States, connecting the lines of local tele *399 phone companies. Its principal activity however consists in the financing of its subsidiary companies constituting part of the system, the securities of which are owned or controlled by it. This activity involves the advance to system companies of large amounts of capital to be permanently used by them to construct plants. These advances constitute a permanent employment of capital by this company represented by securities of such system companies. These large sums must frequently be provided in advance of the actual needs of the system companies and in such cases this company temporarily holds them through the acquisition of short term marketable securities, such as federal securities or certificates of deposit.” Similar statements were attached to all subsequent returns. Not until the audit of capital stock tax reports for the years in issue had such reports been questioned. Likewise it had since 1908 excluded from its gross earnings tax reports interest on obligations issued by debtors located outside New York and its doing so had never been questioned until the audit for the years in issue.
The State Tax Commission determined advances to subsidiaries for use outside New York, the temporary cash investments and interest and dividends receivable from, but not yet payable by, subsidiaries to be assets employed in New York within the meaning of section 183 of the Tax Law and interest income from advances to out-of-State subsidiaries and from obligations of out-of-State obligors held in the temporary cash investment account to be earnings from sources within New York within the meaning of section 184 of the Tax Law. The article 78 proceeding begun by AT&T to review the commission’s determination having been transferred to the Appellate Division, that court modified by annulling so much of it as held the gross earnings tax applicable to income from out-of-State obligors and otherwise confirmed. One Justice dissented as to the capital stock tax on the ground that in view of the longstanding contrary interpretation by the commission and by the Attorney-General (1909 Opns Atty Gen 357), with which AT&T had complied without challenge, the ruling of the commission could not be applied retroactively. AT&T appeals, on dissent grounds, so much of the Appellate Division judgment as relates to the capital stock tax and *400 the State appeals from the annulment of the gross earnings tax determination. We modify, as above stated, and affirm.
II
Whether assets are “employed” in business within this State, although a matter of statutory interpretation, is governed by the rule that “where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited” (National Labor Relations Bd. v Hearst Pub., 322 US 111, 131 [whether newsboys are “employees”]). That rule has been applied by us a number of times with respect to the construction of tax statutes (Matter of Koner v Procaccino, 39 NY2d 258, 264 [whether freelance photographers “practice” a “profession”]; Matter of Young v Bragalini, 3 NY2d 602, 605 [where insurance partnership is “carrying on” business]; Matter of Colgate-Palmolive-Peet Co. v Joseph, 308 NY 333, 338 [whether cartons in which goods sold for resale are delivered are subject to sales tax]; Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108 [whether materials purchased for production of displays into which are incorporated items received by the manufacturer from its customers are purchased “for resale in the form of tangible personal property”]). If the agency’s determination is not supported by substantial evidence or it constitutes a clearly erroneous interpretation of the law or the facts, it will be annulled (Matter of Koner v Procaccino, 39 NY2d, at p 264), but if it is supported by facts or reasonable inferences that can be drawn from the record and has a rational basis in the law, it must be confirmed (Matter of Young v Bragalini, 3 NY2d, at p 605; Matter of Colgate-Palmolive-Peet Co. v Joseph, 308 NY, at p 338). Applying those rules we conclude that moneys advanced to subsidiaries and cash temporarily invested pending such advances are assets employed in New York, but that interest and dividends receivable from, but not yet paid by, subsidiaries are not.
A
AT&T argues that it is a transmission company, not an investment company, that in effect the commission has *401 held assets taxable by New York “if the bookkeeping functions connected with them are located in New York,” and that advances to subsidiaries are employed in New York to no greater extent than are the funds invested by it in its subsidiaries’ capital stock, which is not taxed. It is, of course, true that funds received by a subsidiary and used by it out of State are not employed by the subsidiary in New York, whether received as advances or for the purchase of the subsidiary’s stock. It is, however, an oversimplification to conclude that because the subsidiary employs the funds out of State AT&T has not in making the advances employed its funds in New York.
The commission’s interpretation of the statute is neither without rational basis nor clearly erroneous. The distinction between advances to, and investments in the stock of, subsidiaries follows, as the Appellate Division noted, from the explicit exclusion of stock provided for in the last sentence of subdivision 2 of section 183 of the Tax Law. Moreover, the fact that AT&T is not an investment company does not require the conclusion that investment activity carried on by it in New York as a function of its transmission business is not the employment by it of assets in New York. The governing criteria is not that the debtor to which advances are made is a subsidiary of the creditor (Commonwealth v Gulf Oil Corp., 359 Pa 583, 587; Union Pacific R.R. Co. v Commissioner of Internal Revenue, 69 F2d 67, 69, affd 293 US 282) or the location in which the funds advanced are expended by the subsidiary, but whether the parent corporation carries on sufficient activity in New York with respect to the advances made to the subsidiary that it can be said to employ in New York the funds advanced. The past decisions of this court, although not entirely reconcilable among themselves, are not to the contrary. People ex rel. Texas Co. v Gilchrist (252 NY 19) held the New York activity involved in purchasing out-of-State oil to constitute taxable employment of assets in New York, but recognized that the passive holding in New York of bank deposits for use by the corporation out of State would not be. The latter principle is now incorporated in the exclusion from subdivision 2 of section 183 of the Tax Law of “cash on hand and on deposit”, but the Texas Co. *402 holdings clearly turn on the extent of New York activity. Similarly, the absence of activity in New York of a foreign corporation which had invested its entire capital in the stock of Philippine corporations (People ex rel. Manila Elec. R.R. & Light. Co. v Knapp, 229 NY 502) and the wholly incidental nature of the New York activity of a foreign corporation which had invested its entire capital in the stock of an Illinois corporation (People ex rel. Chicago June. Rys. Co. v Roberts, 154 NY 1) resulted in holdings of nontaxability, but the extensive and sustained investment activities in New York of corporations whose purposes, like those of AT&T, encompassed investment in relation to its business (People ex rel. Brooklyn R. T. Co. v Miller, 85 App Div 178, affd 181 NY 582 [railroad business]; People ex rel. Manhattan Silk Co. v Miller, 125 App Div 296, affd 197 NY 577 [purchasing agent]; People ex rel. New England Loan & Trust Co. v Roberts, 25 App Div 16, affd 156 NY 688 [mortgage loans]; see, also, People ex rel. Tobacco & Allied Stocks v Graves, 250 App Div 149, affd 277 NY 723; People ex rel. North Amer. Co. v Miller, 90 App Div 560, affd 182 NY 521) have been held subject to tax because employing assets in New York through investment activity.
Finally, there can be no question in view of the facts stipulated with respect to the management of the investments by “a full-time staff of people” and the dollar volume and number of transactions involved and of the concession in the statement annexed to the company’s returns that “Its principal activity * * * consists in the financing of its subsidiary companies constituting part of the system” that there is substantial evidence to support the determination that AT&T’s advances to subsidiaries are taxable.
On like reasoning, the temporary cash investment account constitutes taxable assets employed in New York. The securities in the account belong wholly to AT&T, earn substantial income for it, involve multitudinous purchases and sales all of which occur in New York, and require constant monitoring by AT&T’s treasury department personnel. To conclude that because money from the sale of securities in the account is intended for ultimate transmission as advance to or stock purchase from out-of-State subsidiaries, those securities are not assets employed in New York is to ignore reality.
*403 B
The same cannot be said, however, with respect to interest and dividends receivable by, but not yet payable to, AT&T from its subsidiaries. The simple fact is that although interest accrued and dividends declared but not yet payable at the end of a month may properly be counted as an asset of a corporation, there is nothing in the stipulated facts to support the Appellate Division’s conclusion, nor did the commission determine, that the asset was in fact used in New York. That AT&T’s financial position was bettered by inclusion of the asset on its balance sheet can establish that the asset was employed in New York only if one speculates that the receivable was in fact used as a pledge for moneys borrowed by AT&T or that absent the appearance of that asset on the balance sheet the loans made to AT&T would not have been made, or that the interest rates on the loans would have been higher. There is no evidence to support any of those hypotheses. AT&T is taxable not on assets held but only on assets used or employed in New York (cf. People ex rel. Chicago Junc. Rys. Co. v Roberts, 154 NY 1, 6, supra).
C
AT&T argues, nevertheless, and the dissenting Justice at the Appellate Division would have held, that in view of the long-standing contrary practice of the commission in accepting AT&T’s returns as filed, and of an opinion of the Attorney-General (1909 Opns Atty Gen 357) advising the State Comptroller that capital loaned to nonresidents for use in business in other States is not employed in business in New York, the commission’s determination cannot be applied retroactively. We disagree.
First, the opinion of the Attorney-General contains no details from which it can be ascertained whether the Woolworth Co., there involved, engaged in activities in New York similar to those of AT&T or in only formal or incidental activity, such as was held in the Manila Elec. and Chicago Junc. cases (supra), not to constitute taxable employment of assets. Moreover, the opinion made no mention of, but would appear to have been inconsistent with People ex rel. Edison Elec. Light Co. v Campbell (138 *404 NY 543, 547) and People ex rel. Burke v Wells (184 NY 275, affd 208 US 14), which held that bonds or notes of out-of-State corporations situated in New York were employed in New York. Further, there is nothing to suggest that, as in Matter of Stupack (274 NY 198, 211-212), the Legislature, though it has amended the Tax Law sections involved many times since 1909, ever had the Attorney-General’s opinion brought to its attention. Finally, an opinion of the Attorney-General is an element to be considered but is not binding on the courts (Ferraiolo v O’Dwyer, 302 NY 371, 376; Matter of Fertig v Caso, 49 AD2d 573; McKinney’s Cons Laws of NY, Book 1, Statutes, § 129, subd b).
Second, retroactive change in the interpretation of a tax statute is not per se invalid (Matter of Irish Int. Airlines [Levine], 41 NY2d 819, affg for reasons stated below 48 AD2d 202; Automobile Club v Commissioner of Internal Revenue, 353 US 180, 183), at least if not carried so far back as to be palpably unjust (see People ex rel. Beck v Graves, 280 NY 405). Such proscription of retroactive change in administrative interpretation as exists rests upon a presumption of legislative acquiescence in a long-continued practice (Matter of Consolidated Edison Co. v State Tax Comm., 24 NY2d 114, 119). Yet the Legislature is charged with knowledge of the practical construction of a statute only where it is well known (Engle v Talarico, 33 NY2d 237, 242). The academic authorities upon which AT&T relies are primarily concerned with interpretative regulations (Griswold, A Summary of the Regulations Problem, 54 Harv L Rev 398; 2 Davis, Administrative Law [2d ed], § 7:23), whereas we here deal with administrative action of no greater formality than the acceptance of a tax return as filed, not with a regulation or even with a formal ruling (see Matter of Petrie Stores Corp. v Tully, 80 AD2d 328, 330). This is not to say that nothing less than a formal regulation or ruling can ever be accorded the significance for which AT&T argues, but rather that the less formal the action or failure to act said to constitute an interpretation foreclosing retroactive change, the clearer should it be that it was in fact a considered position of the agency (Griswold, op. cit., at pp 417-418).
Third, although the Consolidated Edison case involved such a situation, the present case, so far as the record *405 reveals, does not. Thus, as Consolidated Edison’s brief before this court shows, the “unrefuted assertion” to which the Edison opinion refers (24 NY2d, at p 119) was that “During these 53 years the Tax Commission was obviously aware that public utility companies frequently sold real property, machinery and equipment which was no longer employable in their business. It can only be assumed, therefore, that taxes were not assessed on the receipts from such sales because the Commission — when the statute was amended and for more than fifty years thereafter — believed that the Legislature did not intend to tax receipts from the disposition of capital assets no longer employed in the utility business” (pp 11-12 [emphasis supplied]). Here, we are told by the stipulation of fact nothing about the position of the commission with respect to other companies engaged in activity similar to that in which AT&T engages in New York. So far as pertinent the stipulation sets forth that since 1910 AT&T’s advances to subsidiaries have been treated on its returns as assets employed in New York only to the extent that the debtor’s assets have been allocated to New York and since 1923 its temporary cash investments have been treated as pre-employment capital and not as assets employed in New York. Nothing in the stipulation, other than the somewhat equivocal statement, quoted above, annexed to the returns, suggests that the taxing authorities were necessarily aware that possible taxable “employed assets” had not been included. Nor, of course, is there any basis for assuming legislative awareness. Under such circumstances the balance between administrative flexibility and possible unfairness to a taxpayer weighs in favor of the public interest in enforcement of the Tax Law (see Matter of National Elevator Ind. v State Tax Comm., 49 NY2d 538, 548-549; Matter of Turner Constr. Co. v State Tax Comm., 57 AD2d 201, 203).
We find no error, therefore, in the Appellate Division’s conclusion that what is here involved is no more than a permissible correction of a prior, albeit long-standing, oversight.
Ill
That its advances to subsidiaries and temporary cash investment account are assets “employed” in New York *406 within the meaning of section 183 of the Tax Law, does not, however, support the conclusion drawn by the commission that the interest income received by AT&T on those advances and from obligations of out-of-State obligors held in that account are earnings from a “source” within the State within the meaning of section 184 of the Tax Law. Only in the most metaphysical sense can it be said that moneys paid to AT&T by out-of-State obligors, subsidiary or unaffiliated, has its source in the activities of AT&T within New York.
The contrary view ignores not only the commonly accepted meaning of the word “source,” upon which the Appellate Division relied, but also the difference in language used in section 184 from that used in section 183, and the fact that the Legislature when, as with respect to the income tax on nonresident individuals (Tax Law, § 632, subd [b], par [2]), it sought to limit the meaning of “source” by the concept that the income be derived “from property employed * * * in this state,” knew how to do so.
Nor is People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Roberts (157 NY 677, affg on opn below 32 App Div 113) authority to the contrary. Although, as the State points out, it held “gross earnings” as used in section 184 of the Tax Law to include receipts arising from employment of capital whether in the transportation business or otherwise and the relator’s earnings to be separate and distinct from the earnings of the companies in whose securities it had invested, the statute as it then read spoke only to “gross earnings” and made no mention of the “source” from which those earnings derived (see 32 App Div, at p 114). Furthermore, the fact that the earnings of the out-of-State obligors and subsidiaries are separate from those of AT&T enhances rather than detracts from the conclusion that income received from them by AT&T comes from an out-of-State source, for it emphasizes the intervening out-of-State activity as the source from which the income springs. In short, although AT&T’s New York activity in relation to advances to subsidiaries and its temporary cash investments constitutes employment of assets in New York within the meaning of section 183 of the Tax Law, there is no rational basis for the conclusion that section 184 of the *407 Tax Law, in its use of the word “source” was intended to encompass income received from such advances and investments in out-of-State subsidiaries and obligors.
For the foregoing reasons, the judgment of the Appellate Division should be modified as above set forth and, as so modified, affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Judgment modified in accordance with the opinion herein and, as so modified, affirmed, without costs.