GILBERT DiLUCIA, Individually and as Announced Candidate for Mayor of the City of New York, Respondent, v LAWRENCE A. MANDELKER, as Treasurer of New Yorkers for Koch 1985, Appellant, and LAWRENCE A. MANDELKER, Defendant.

First Department, October 3, 1985

### APPEARANCES OF COUNSEL

*Barry H. Garfinkel* of counsel (*Barry H. Garfinkel, Edward J. Yodowitz* and *Joseph Guglielmelli,* attorneys), for appellant.

*Bernard Kenny* for respondent.

### OPINION OF THE COURT

FEIN, J.

On December 12, 1984, a birthday dinner was held in honor of Mayor Edward I. Koch at the Sheraton Centre Hotel in New York City. The dinner was organized by a group of private citizens assisted by staff members of New Yorkers for Koch 1985. The proceeds of the tickets over and above the cost of the dinner were to be used for the 1985 reelection campaign of Mayor Koch. It is undisputed that the function of the dinner was to provide campaign funds.

On December 24, 1984 plaintiff Gilbert DiLucia (DiLucia), individually and as a candidate for Mayor, commenced this action by suing Lawrence A. Mandelker (Mandelker) both individually and as treasurer of New Yorkers for Koch 1985 (the Committee).

The complaint alleged that at the dinner the Committee received contributions from individuals or entities interested

directly or indirectly in business dealings with the City of New York. It was asserted that these contributions constituted prohibited gifts within the meaning of New York City Charter § 2604 (b) (3) in that such contributions "have the potential to, or may be perceived to, favorably influence official action by the office of the Mayor relating to said business connections." The complaint alleged only a violation of the Charter. It did not question the Committee's compliance with the New York State Election Law. It was further alleged that such contributions "unethically increase Mayor Koch's campaign funds, thereby increasing the Mayor's chances for reelection to the detriment of plaintiff's own election campaign for Mayor."

The complaint requested a judgment directing the return of such funds to the contributors, less the cost of the dinners, and directing the disclosure of the names and addresses of all contributors at the dinner and the respective amounts contributed.

DiLucia moved for temporary injunctive relief on his claim. Defendants cross-moved to dismiss the complaint on the ground that campaign contributions do not, as a matter of law, constitute "gifts" within the meaning of New York City Charter § 2604.

In the order appealed from, Special Term denied DiLucia's motion for a temporary restraining order, ruling that he had "failed to establish at this stage of the proceeding that the donations and contributions herein are 'gifts' within the meaning of Section § 2604 (b) (3) of the New York City Charter." Defendants' cross motion to dismiss was granted only to the extent of dismissing the claim against Mandelker. However, with respect to the Committee, Special Term denied the motion finding that the candidate's "degree of control" over the Committee or the "facility of [his] access" to the Committee's funds were relevant "significant factors" to be considered in determining whether the contributions at issue were prohibited "gifts" under the section. Although both of the parties denied that the degree of control by the political beneficiary or the facility of his access to the funds is at issue, Special Term denied the Committee's motion on this ground.

We disagree. The issue for determination is one of law. The question of whether political contributions are gifts within the meaning of the New York City Charter § 2604 is a legal one calling for the construction of that section. Only if it is found that political contributions fall within the meaning of gifts in section 2604 will it be necessary to ascertain the degree of control exercised by Mayor Koch over the Committee or his access to its funds.

New York City Charter § 2604 reads, in pertinent part, as follows:

"b. No member of the board of estimate or the council or other salaried officer or employee of the city or any city agency * * *

"(3) shall accept any valuable gift, whether in the form of service, loan, thing or promise, or in any other form, from any person, firm, corporation or other entity which to his knowledge is interested directly or indirectly in any manner whatsoever in any such business dealings * * *

"d. As used in this chapter, the words 'business dealings with the city' shall include any contract, service, work or business with, any sale, renting or other disposition to, any purchase, leasing, or other acquisition from, and any grant, license, permit or other privilege from, the city or any city agency, and any performance of or litigation with respect to any of the foregoing".

No court has hitherto been called upon to interpret that section and to determine the specific issue now raised, whether campaign contributions are gifts within the meaning of that section.

The Committee argues that as a matter of law, campaign contributions do not constitute gifts within the meaning of the Charter. Although no court has so ruled, the Board of Ethics of the City of New York has uniformly held that campaign contributions are not gifts within the meaning of New York City Charter § 2604.

On October 5, 1961, the Board of Ethics, in a somewhat similar context in the 1961 mayoralty campaign, issued Formal Opinion No. 35 in which it stated, in pertinent party: "Does a campaign contribution or promise to contribute to a campaign committee constitute a 'valuable gift' to an officer or employee of the city within the context of subsection f of the Code of Ethics? We have concluded from a careful analysis of the Code of Ethics and its legislative history, that the Code did not include political contributions in its prohibitions. The conduct of political committees and the making of political contributions is covered by other laws, and we are advised by the Corporation Counsel that in his opinion such other laws have not been violated. The Code of Ethics was not intended to be an unfair hobble on incumbent candidates for city office since it has no application to such candidates who are not incumbents."

During the 1981 mayoralty campaign, the Board of Ethics reemphasized the position taken in Opinion No. 35 in a letter

opinion responding to inquiries by Theodore W. Kheel, Esq. The Board stated:

"The Board of Ethics has received your letters of April 28 and April 30, 1981 in which you raised certain questions with respect to the acceptance of political contributions by Mayor Koch's campaign committee.

"You suggest that the acceptance of such contributions may violate Section 2604 b (3) of the City Charter, which prevents a salaried officer or employee of the City from accepting valuable gifts from persons or entities having business dealings with the City. *Campaign contributions have never been considered gifts within the meaning of the Code of Ethics.*" (Emphasis supplied.)

The Board of Ethics is empowered by New York City Charter § 2602 to render advisory opinions with respect to conflicts of interest arising under section 2604. Accordingly, its opinions should be given considerable weight by the courts. It has long been settled that the opinions of administrative agencies, generally those with powers far greater than the advisory powers of the Board of Ethics, are entitled to great deference. See *Matter of Sheehan v City of Binghamton* (59 AD2d 808, 809), which held that "[s]ince the Committee on Public Access of Records[*] is the administrative agency charged with oversight of the Freedom of Information Law ([Public Officers Law] § 88, subd 9), its interpretation of the statute, if not irrational or unreasonable, should be upheld (see *Matter of Howard v Wyman,* 28 NY2d 434, 438)." Although *Matter of Howard* dealt with the New York City Social Services Department, an agency having much more than advisory powers, and *Sheehan* dealt with an agency having only advisory powers, the conclusion is plain that absent a clear showing to the contrary, advisory opinions of such agencies should be given great deference and validity.

It is patent that New York City Charter § 2604 was designed to prohibit gifts to public officials. It was not directed at political contributions. The sole reference to contributions in the Charter is set forth in section 2606, entitled "Political contributions", which makes it a misdemeanor to promise a city job as an inducement for a political contribution. It follows that if the New York City Council wished to include political contributions within the purview of prohibited gifts, it would have explicitly done so.

Plaintiff's reliance on the New York State Election Law is misplaced. Section 1-102 of that law declares that the Election

---

* Now the Committee on Open Government (Public Officers Law § 89).

Law is to "govern the conduct of all elections at which voters of the state of New York may cast a ballot for the purpose of electing * * * an individual to any federal, state, county, city, town or village office".

Section 14-100 (9) (1) defines "contribution", in part, as "any gift, subscription * * * advance, or deposit of money or any thing of value, made in connection with the nomination for election, or election, of any candidate".

However, that section specifically relates only to the provisions of Election Law article 14 which governs campaign receipts and expenditures and the statements required to be filed by political candidates or their committees as well as imposing certain other limitations on such contributions. Nothing in that article or the definitions contained therein relates to the purposes of the New York City Charter. Hence, plaintiff's assertion that a contribution is a gift within the meaning of the New York City Charter finds no support in the Election Law.

It is undisputed on this record that the Committee has fully complied with the financial disclosure and other requirements of the New York State Election Law, the contribution limitation and disclosure requirements of which serve to prevent corruption or the appearance of corruption (*see, Buckley v Valeo*, 424 US 1, 26-30).

Although we need not reach that issue, it may very well be that New York City Charter § 2604, as construed by Special Term and as applied to the Committee, would impermissibly burden contributors' 1st Amendment rights. A person's ability to make political contributions involves the exercise of a fundamental freedom, protected by the 1st Amendment to the US Constitution and NY Constitution, article I, § 8 (*Buckley v Valeo*, 424 US 1, 14-15, 22, *supra*).

We are not unaware of the problems of financing political campaigns and their increasing cost. However, resolution of such problems is for the Legislature, not the courts. The provisions of New York City Charter § 2604 are plainly not directed at prohibiting contributions to political campaigns. Moreover, plaintiff's claims and the determination at Special Term would apply only to incumbents. As noted in *Buckley v Valeo* (424 US 1, 33, *supra*), "the danger of corruption and the appearance of corruption apply with equal force to challengers and to incumbents".

The order, Supreme Court, New York County (Kenneth Shorter, J.), entered January 22, 1985, denying defendants' motion to dismiss the complaint for failure to state a cause of

action should be modified, on the law, without costs, to the extent of directing judgment in favor of the defendants and declaring that the term "gift" as used in New York City Charter § 2604 does not include political contributions, and otherwise affirmed.

KUPFERMAN, J. P., SULLIVAN and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on January 22, 1985, unanimously modified, on the law, without costs and without disbursements, to the extent of directing judgment in favor of the defendants and declaring that the term "gift" as used in New York City Charter § 2604 does not include political contributions, and otherwise affirmed.