*741 OPINION OF THE COURT
Edward H. Lehner, J.
In this litigation plaintiffs seek a declaration that, notwithstanding the adoption of Introduction 845-A (Intro) as Local Law No. 51 (2008) of the City of New York (LL51), permitting elected city officials to serve for three consecutive terms, the existing members of the City Council as well as the present Mayor and Public Advocate remain subject to the two-term limitation contained in the prior law (NY City Charter § 1138).[1]
The sole basis of plaintiffs’ claim, as set forth in their petition, is that by enacting LL51, the Council and the Mayor violated section 2604 (b) (3) of the New York City Charter by using their positions “to obtain ... [a] privilege or . . . personal advantage” for themselves (petition ¶ 22). No argument is made herein that the Council lacked the authority to adopt LL51 or even to repeal the entire term limit law (tr at 11-12, 19). The only remedy sought is the declaration referred to above with respect to officials involved in the enactment (tr at 13-15). Thus, with respect to the remedy sought, this suit differs from the action commenced in federal court in which the Second Circuit this week affirmed the judgment upholding the law against challenges on a myriad of grounds (Molinari v Bloomberg, 596 F Supp 2d 546 [ED NY 2009], affd 564 F3d 587 [2009]).
This matter was commenced in October 2008 as a special proceeding, but by stipulation dated November 10, 2008 was converted into a plenary action. By notice of motion dated December 15, 2008, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7), and by notice of motion dated January 30, 2009, plaintiffs cross-moved for summary judgment seeking the aforesaid declaration. At oral argument held on April 17, 2009,[2] the parties agreed that there were no disputed issues of fact and thus the court could consider the motions as seeking summary judgment (tr at 26).
Although initially defendants asserted a lack of standing on the part of plaintiffs, that defense was withdrawn in light of the *742 statement of one of the plaintiffs (Danielle Singleton) that she intends to be a candidate for the Council (tr at 3). In addition to asserting a lack of merit to plaintiffs’ claim, defendants maintain that a violation of section 2604 (b) (3) does not give rise to a private right of action.
Discussion
Section 2604 (b) (3) of the Charter provides as follows: “No public servant shall use or attempt to use his or her position as a public servant to obtain any financial gain, contract, license, privilege or other private or personal advantage, direct or indirect, for the public servant or any person or firm associated with the public servant.” Although slightly different from the position asserted in the petition verified October 21, 2008 (dated just prior to passage of Intro 845-A on October 23, 2008), at oral argument plaintiffs’ counsel stated that the word “license” is the only term in the above Charter provision on which plaintiffs’ challenge is based (tr at 33).
Prior to the vote on Intro 845-A, Public Advocate Betsy Gotbaum and two council members requested an opinion from the City’s Conflicts of Interest Board (Board) as to whether there would be a conflict in their participation in the consideration of and voting upon Intro 845-A. The Board was created pursuant to section 2602 of the Charter and consists of five members appointed by the Mayor. Among other functions, the Board is authorized to give advisory opinions to public servants “with respect to all matters covered by” chapter 68 of the Charter dealing with conflicts of interest (Charter § 2603 [c] [1]). Section 2603 (c) (2) provides that a public servant who acts or fails to act based on “a reasonable reliance on the opinion, . . . shall not be subject to penalties or sanctions.”
In opining that the council members would not violate the Charter by participating in the legislative process and voting on a measure relating to term limits, the Board stated that “there is no duty more fundamental to their office than the obligation to vote upon pending bills lawfully before them,” and that the suggestion “that elected officials may never act on matters properly before them if their actions would have implications for their personal political prospects . . . would bring democratic government to a halt.” In so finding it was noted that there was no dispute that council members may properly vote on their own salaries, the amount of campaign contributions they may receive, and various perks of office. The Board concluded that *743 the conflicts of interest law “concerns conflicts between public servants’ official duties and, in the main, their private, financial interests . . . , not their political interests in serving as public officials or in the terms and conditions of that service.”
With respect to salaries, it is noted that council members are not limited, as are state legislators, to voting upon salary increases only for members elected to a future session. In fact, the last salary increase voted upon by council members was made retroactive.
In Molinari v Bloomberg (596 F Supp 2d at 579), District Court Judge Sifton, in upholding LL51, quoted with approval the statement in DiLucia v Mandelker (110 AD2d 260, 263 [1st Dept 1985]) that an advisory opinion of the Board “should be given considerable weight.” He concluded that the aforesaid opinion of the Board was correct, which conclusion was affirmed by the Second Circuit. This court also finds that deference is appropriate here. In O'Brien v Spitzer (7 NY3d 239, 242 [2006]), it was stated that “[w]hile as a general rule courts will not defer to administrative agencies in matters of pure statutory interpretation . . . , deference is appropriate where the question is one of specific application of a broad statutory term” (internal quotation marks omitted). In that case the terms involved were “employee” and “independent contractor,” while here the terms whose meanings are in dispute are “license,” “privilege,” and “personal advantage.” (See also Matter of American Tel. & Tel. Co. v State Tax Commn., 61 NY2d 393, 400 [1984].)
“[A] primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature, and in finding such purpose, one should look to the entire statute, its legislative history and the statutes of which it is made a part.” (Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of New York, 78 NY2d 143, 151 [1991] [internal quotation marks omitted].) In Majewski v Broadalbin-Perth Cent. School Dist. (91 NY2d 577, 583 [1998]), the Court quoted approvingly from Tompkins v Hunter (149 NY 117, 122-123 [1896]) that “[i]n construing statutes . . . resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning.”
With the passage of LL51, every citizen meeting certain residency requirements and not barred by reason of criminal conviction has the right, by obtaining a designated number of *744 signatures, to run for public office in the City of New York. This is not a “license” granted by government, but rather is a basic right inherent to our democratic form of government. Although prior law eliminated this right for certain incumbent officeholders, voting to restore such political right was not the grant of a “license” as that term is used in the subject Charter section. That term refers to a private right that gives the holder a personal financial advantage. As the Board correctly indicated in its opinion, the subject section is intended to deal with conflicts between a public servant’s official duties and his or her private personal financial interests. Since there is no “personal advantage,” as contemplated by the section, in permitting incumbents who otherwise would have been barred from seeking reelection to now run for another term, there is no merit to plaintiffs’ position.
In conclusion, the court declares that the actions of the Council and the Mayor in enacting LL51 did not violate Charter § 2604 (b) (3), and thus plaintiffs are not entitled to the relief sought herein.
Since the foregoing declaration resolves the present controversy on its merits, the court has no need to determine defendants’ alternate legal position that the subject Charter provision fails to grant a private right of action for a violation.[3]

. Plaintiffs agreed at oral argument that the limitation sought would not apply to the City Comptroller, the borough presidents or any council member elected after passage of Intro 845-A as they were not involved in the enactment of the amendment (tr at 13-14, 31).

. It is noted that notwithstanding the imminence of the commencement of the election cycle in June, the parties by several stipulations adjourned the motions until April 17.

. The Second Circuit opinion in Molinari also declined to rule on this issue as it decided the issues before it on the merits.